STEPHEN J. WINDHORST, Judge.
laD.W.[1] was adjudicated delinquent for illegal possession of a handgun by a juvenile, second offense, in violation of La. R.S. *1185 14:95.8B(2), and was committed to the Office of Juvenile Justice (“OJJ”) for two years to run concurrently with the revocation of his parole in Complaint “C.” This appeal followed. For the following reasons, D.W.’s adjudication and commitment are affirmed.
FACTS
On October 27, 2012, Deputy Candice Emmanuel of the Jefferson Parish Sheriff’s Office was working a detail at Nicholas[2] Playground when a parent pointed out a suspicious male (hereafter “the ‘suspect’ ”), who was wearing a camouflage jacket and denim jeans. Deputy Emmanuel observed the “suspect,” who was with another male later identified as D.W. The “suspect” and D.W. left the park area and began to run “once the coaches began to try to get one of their |3players to come back inside of the playground area.” Deputy Emmanuel notified third district officers that she had been informed that the “suspect” may have a weapon. She requested that officers come to the scene to determine whether the “suspect” or D.W. were armed.
Deputy Michael Leyva responded to Deputy Emmanuel’s call for assistance. While he was traveling down Westwood near the playground, he saw a black male, later identified as D.W., running away from the playground. Deputy Leyva turned around and turned left on St. Ann Street. As soon as he did, he saw the same black male running. When Deputy Leyva got close, he saw D.W. discard a black handgun on the hood of a car, and then duck down. Deputy Leyva jumped out of his car, pulled his “side arm,” and told D.W. to get on the ground and show his hands. Deputy Leyva started walking toward the car, and D.W. came out and got on the ground. He kept his firearm drawn on D.W. until backup arrived.
Deputy Steven Dorsey and Deputy “Mel” arrived at the scene to assist Deputy Leyva. Deputy Dorsey handcuffed D.W. and placed him in the police unit. Deputy “Mel” retrieved a black handgun from the hood of the car. The deputies also retrieved an “extended clip” that was stuck in a garden. The officers radioed for Deputy Emmanuel to come and meet them to possibly identify the “suspect” or D.W. When Deputy Emmanuel arrived at St. Ann Street, she positively identified D.W. The “suspect” who was wearing the camouflage jacket escaped.
D.W. testified that on October 27, 2012, at approximately 3:30 P.M., he was at Nicholson Playground with his mother, stepfather, and two friends. He testified that when he came from the bathroom, one of his friends was in an altercation with another group of friends. The police approached the group, and everybody started running, including D.W. and his friend, who ran from the park in between the houses. He testified that when they got to St. Ann Street, he stopped right by a car |4and a house, but his friend escaped. D.W. denied placing any kind of handgun on the hood of the car. He conceded that he saw the police take the gun off the car, but he did not see where the clip came from. D.W. admitted that he was on parole for illegal carrying of a firearm, the same offense he was charged with in this case.
SUFFICIENCY OF EVIDENCE
In his first assignment of error, D.W. claims that the evidence was insufficient to prove each element of illegal possession of a handgun by a juvenile, second offense, beyond a reasonable doubt.
In order for the court to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the *1186 child committed a delinquent act alleged in the petition. La. Ch.C. art. 883. In reviewing the sufficiency of evidence, appellate courts must determine that the evidence, direct or circumstantial, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt, in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State ex rel. D.W., 09-855 (La.App. 5 Cir. 9/14/10), 47 So.3d 1048, 1053. In a juvenile delinquency proceeding, the State’s burden of proof is the same as in a criminal proceeding against an adult, i e., to prove beyond a reasonable doubt every element of the offense alleged in the petition. Id.
The rule as to circumstantial evidence is that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438.
In juvenile proceedings, the scope of review on appeal extends to both law and facts. See La. Const, art. V, Section 10(B); State in the Interest of D.S., 11-416 (La.App. 5 Cir. 12/28/11), 83 So.3d 1131, 1136. The “clearly wrong-manifest | .¡¡error” standard of review should be used to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt. Id.
Although appellate review of juvenile cases extends to law and fact, the Juvenile Court judge observes the conduct and demeanor of the witnesses and is in a better position to determine credibility and weigh the evidence. State in the Interest of D.S., 83 So.3d at 1136. Thus, the appellate court should afford great deference to the judge’s findings of fact and to the judge’s determination of witness credibility and weight to be given their testimonies. Id. Appellate courts may not reverse findings of the trial court unless manifestly erroneous or clearly wrong. Id.

Proof of Age

In the present case, D.W. was adjudicated delinquent of illegal possession of a firearm by a juvenile, second offense, in violation of La. R.S. 14:95.8.[3] La. R.S. 14:95.8 provides that it is unlawful for any person who has not attained the age of 17 years knowingly to possess any handgun on his person. D.W. argues that the State failed to prove his age at trial.
Our review indicates that at the commencement of the adjudication hearing, but prior to the taking of evidence, the Juvenile Court judge requested D.W. to state his name and date of birth for the *1187 record and D.W. responded, “D.W., 12th month, 8, 95.” Later, after D.W. was sworn in prior to his testimony, defense | fiCounsel asked him to again state his name, and D.W. replied, “D.W., 12th month, 8, 95.” Even though D.W. did not explicitly testify that his date of birth was December 8, 1995, it is clear from his introductory appearance and his testimony that he was referring to his date of birth when he answered, “D.W., 12th month, 8, 95.” Further, the officers’ testimony confirmed that the incident occurred on October 27, 2012. Thus, D.W. was 16 years old at the time of the incident and, therefore, it would have been unlawful for him to possess any handgun on his person under La. R.S. 14:95.8.
Additionally, the date of birth on this petition “E,” and on two earlier petitions, “B” and “C,” is December 8, 1995. Furthermore, at every hearing. prior to December 19, 2012, D.W. identified his date of birth as December 8, 1995. See State in the Interest of Metoyer, 606 So.2d 74, 76 (La.App. 3 Cir.1992); State v. D.L., 29,789 (La.App. 2 Cir. 6/18/97), 697 So.2d 706, 709-710.
Based on the foregoing, a rational trier of fact could have found that the evidence was sufficient to prove that D.W. was under the age of 17 when he committed this offense. This assignment of error is without merit.

Possession

D.W. next argues that the State failed to prove he actually possessed the handgun as required under La. R.S. 14:95.8A.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. The credibility of the witnesses will not be reweighed on appeal. Id. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual 17conclusion. State v. Turner, 05-75 (La.App. 5 Cir. 5/31/05), 904 So.2d 816, 823, writ denied, 05-2591 (La.5/26/06), 930 So.2d 20.
At trial, Deputy Leyva testified that he saw D.W. discard a black handgun on the hood of a car and then duck down. The handgun was retrieved and admitted into evidence at trial. Deputy Leyva positively identified the handgun in evidence as the handgun that was discarded by D.W. D.W. denied placing any kind of handgun on the hood of a car. There is not any internal contradiction or irreconcilable conflict with physical evidence pertaining to Deputy Leyva’s testimony. The Juvenile Court judge obviously found the State’s witness to be more credible than D.W. Upon this evidence, a rational trier of fact could have found that the evidence was sufficient to prove that D.W. possessed the handgun. This assignment of error is without merit.

Length of Barrel

D.W. further argues that the State failed to prove that the length of the barrel of the handgun did not exceed 12 inches as required by La. R.S. 14:95.8D.
Deputy Emmanuel testified that she was notified by a parent at the playground that the “suspect” might have a weapon. Based on the deputy’s experience, she stated that the “suspect” áppeared suspicious! Deputy Emmanuel explained that typically when young juveniles wear loose clothing, they pull their pants up with both hands; however, the “suspect” did not do that. The “suspect” held his left arm very close to his body and used the right hand to go all the way around his body to pull his pants up. D.W., who was with the “suspect,” admitted at trial that he and the *1188 “suspect” started running when the police approached them. Deputy Leyva testified that he saw D.W. discard a black handgun on top of the hood of a car. Deputy Dorsey identified the weapon as a pistol. The handgun was |8admitted into evidence at trial and identified by the deputy as the weapon discarded by D.W.
Even though there was no testimony regarding barrel length, the Juvenile Court judge had the benefit of viewing the handgun, listening to the testimony and could see for herself whether the juvenile possessed a handgun as defined by La. R.S. 14:95.8 and R.S. 14:37.2. See State in the Interest of T.E., 12-517 (La.6/29/12), 91 So.3d 292, 292-295. Thus, the judge was not manifestly erroneous or clearly wrong in finding that the barrel of the handgun did not exceed 12 inches. This assignment of error is without merit.

Predicate Offense

D.W. further claims that the State failed to prove he was convicted of the predicate offense that was set forth in the petition. He contends that the State was attempting to use his conviction of La. R.S. 14:95 E as a predicate instead of his conviction of La. R.S. 14:95.8.
During cross-examination, the prosecutor asked D.W. what he was on parole for, and D.W. responded, “Illegal juvenile catching, carrying a firearm.” The prosecutor said, “Alright the same thing you’re charged with right now?” and D.W. responded, “Yes sir.” Thus, based on that testimony alone, we find that D.W.’s admission he had a prior conviction of La. R.S. 14:95.8 was sufficient to establish the predicate offense. Compare State v. Payton, 00-2899 (La.3/15/02), 810 So.2d 1127, 1130 (testimony from witnesses may be used to establish prima facie proof of a prior conviction in a multiple offender case.)
Additionally, the record supports D.W.’s testimony that he had such a prior conviction. On January 20, 2012, a “Motion to Modify Judgment of Disposition Revocation of Probation” was filed into the record. In that motion, the probation officer moved for revocation of probation, stating that D.W. was adjudicated on | ¡¡January 19, 2012, for illegal possession of a handgun by a juvenile. In an affidavit attached to the motion, the probation officer asserted that she had received information that the offense occurred on October 30, 2011. Attached to the motion was a written judgment from the Juvenile Court in New Or-leáns dated January 19, 2012, and signed on January 25, 2012. The judgment indicated that D.W. pled guilty to illegal possession of a handgun by a juvenile that was committed on October 30, 2011. Although the statute referenced in the judgment was La. R.S. 14:95, and not La. R.S. 14:95.8, it is apparent that the reference to La. R.S. 14:95 was a clerical mistake, since R.S. 14:95.8 prohibits illegal possession of a handgun by a juvenile. The minute entry for February 2, 2012 indicates that the Juvenile Court judge in this case revoked D.W.’s probation on D.W.’s La. R.S. 14:95 E conviction in petition “C” based on his adjudication for La. R.S. 14:95.8 in Orleans Parish. Derryl Dunn of OJJ testified at the sentencing hearing that D.W. was committed to OJJ on February 14, 2012, for illegal possession of a handgun by a juvenile, and that he was released on September 12, 2012.
Considering the above, we find that a rational trier of fact could have found that D.W. had a prior conviction of La. R.S. 14:95.8. This assignment of error is without merit.
D.W. further argues that the predicate offense in the petition contained incorrect information.
The purpose of a delinquency petition is to' give the juvenile notice and an opportunity to defend. State v. Hillman, *1189 353 So.2d 1356, 1358 (La.App. 3 Cir.1977). La. Ch.C. art. 844D provides that failure to comply with formal requirements of this Article shall not be grounds for dismissal of a petition or invalidation of the proceedings unless it results in substantial prejudice.
|inD.W. is correct that the State included incorrect information as to the predicate offense in petition “E.” However, the petition set forth that D.W. was being prosecuted for illegal possession of a firearm by a juvenile, second offense, in violation of La. R.S. 14:95.8 B(2), which was the correct statutory citation. The errors in the petition are not elements of the crime of illegal possession of a firearm by a juvenile, second offense. Moreover, the record indicates that D.W. only had one prior La. R.S. 14:95.8 conviction. As such, he had clear notice of the offense with which he was charged and the predicate offense, and the opportunity to defend himself against the allegations of the petition. Therefore, we can find no prejudice to D.W. caused by the errors in the petition.
Based on the foregoing, a rational trier of fact could have found that the evidence was sufficient to establish that D.W. was convicted of the predicate offense contained in petition “E.” This assignment of error is without merit.
CONSTITUTIONALITY OF STATUTE
In his second assignment of error, D.W. contends that La. R.S. 14:95.8 is unconstitutional and a violation of Article I, Section 11 of the Constitution of the State of Louisiana and the Fourteenth Amendment of the Constitution of the United States.
Litigants must raise constitutional attacks in the trial court, not the appellate courts, and the constitutional challenge must be specially pleaded and the grounds for the claim particularized. Vallo v. Gayle Oil Company, Inc., 94-1238 (La.11/30/94), 646 So.2d 859, 864-65; See also State v. Hatton, 07-2377 (La.7/1/08), 985 So.2d 709, 718. Exceptions to this general rule are when: (1) a statute attempts to limit the constitutional power of the courts to review cases; (2) the statute has been declared unconstitutional in another case; (3) the statute applicable to the specific case becomes effective after the appeal is lodged in the higher court; Inor (4) when an act which is the basis of a criminal charge is patently unconstitutional on its face and the issue appears as an error patent on the face of the record. Mosing v. Domas, 02-12 (La.10/15/02), 830 So.2d 967, 975 fn. 2.
D.W. did not properly plead or raise this issue in the trial court, no exceptions are applicable, and the issue will not be considered under this assignment of error on appeal.
ILLEGAL OR EXCESSIVE DISPOSITION
In his third assignment of error, D.W. claims that the Juvenile Court judge erred in imposing either an illegal or an excessive disposition.
The Louisiana Constitution of 1974, Art. I, Sec. 20 prohibits “cruel, excessive, or unusual punishment.” State ex rel. T.S., 04-1111 (La.App. 5 Cir. 3/1/05), 900 So.2d 77, 79. In considering dispositional options, the court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot be adequately safeguarded without such removal. La. Ch.C. art. 901(A); Id. at 80. Additionally, the court should impose the least restrictive disposition authorized by Articles 897 through 900 of this Title which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society. La. Ch.C. art. 901(B); Id. The commitment of a child to the cus *1190 tody of the Department of Public Safety and Corrections may be appropriate if there is an undue risk that during the period of probation the child will commit another crime, that the child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment, a lesser disposition will degrade the seriousness of the child’s delinquent act, or the delinquent act involved the illegal carrying, use, or possession of a firearm. La. Ch.C. art. 901(C); Id.
| |9On appeal, the record must be reviewed when excessive commitment in a juvenile proceeding is alleged in order to determine whether the juvenile court imposed the least restrictive disposition consistent with the circumstances of the case, the child’s needs, and the best interest of society. La. Ch.C. art. 901(B). Id. at 79. Because of the special nature of the proceedings, a juvenile court has much discretion, but must balance the needs of the child with the best interest of society. Id. at 79-80.
D.W. was adjudicated delinquent for illegal possession of a handgun by a juvenile, second offense, in violation of La. R.S. 14:95.8. La. R.S. 14:95.8B(2) provides that on a second conviction, the offender shall be fined not more than five hundred dollars and imprisoned with or without hard labor for not more than two years.
At the sentencing hearing, Derryl Dunn testified that D.W. was committed to the OJJ on February 14, 2012, for illegal possession of a handgun by a juvenile and that he was released on September 12, 2012. Mr. Dunn testified that he was to supervise D.W. on parole, but D.W. was soon rearrested on October 27, 2012, for the present charge. Further, OJJ had made a referral to substance abuse counseling and “trackers,” but they had little effect on D.W. since he was arrested on the same charge a little more than one month after coming home. He further testified that he discussed this matter with the staff at the OJJ, and it was a consensus that if D.W. was found guilty of this charge, the OJJ was recommending that he be committed to secure care. Mr. Dunn also recommended revocation of D.W.’s parole, but that disposition run concurrently with the disposition on the present charge. The State, defense counsel, and the Juvenile Court judge agreed that revocation in that case was mandatory under La. Ch.C. art. 914 B..
|, sAfter hearing Mr. Dunn’s testimony, the Juvenile Court judge revoked D.W.’s “prior commitment.” She further stated that she would run the prior commitment concurrent with the current offense. The judge found that the• State had made a reasonable effort to consider D.W.’s health and safety to prevent or eliminate the need of removal from the home. She told D.W. that he had been offered probation supervision, the OJJ Tracker Program, Victim Awareness, ■ and substance abuse therapy and that he had been previously incarcerated and offered individual therapy, substance abuse therapy, and academic services, all to no avail. The judge stated that D.W. continued to place himself at risk by not complying with probation rules of the home, by testing positive for drugs, and by receiving additional charges for gun possession. Furthermore, reasonable efforts would be made to make it possible for D.W. to return home. She ordered family therapy, home visits, community resource referrals, individual substance abuse therapy, and academic services. The judge recommended that D.W. be assigned to the secure placement program, that the maximum duration would be two years, and that she would review the matter in four months. The Juvenile Court judge committed D.W. to the Department of Juvenile Justice for two years on this offense.
*1191 D.W. has a history of delinquent behavior and is clearly a threat to public safety, and that behavior and threat have continued unabated even having been given probation and offered numerous rehabilitative services with which he refused to comply. We therefore find that the Juvenile Court judge imposed the least restrictive disposition consistent with the circumstances of this case and D.W.’s needs. See La. Ch.C. art. 901(B); State ex rel. T.S., supra. This assignment is wholly without merit.
^INEFFECTIVE ASSISTANCE OF COUNSEL
In his fourth assignment of error, D.W. argues that his trial counsel was ineffective because he: (1) failed to raise and argue the constitutionality of La. R.S. 14:95.8; (2) failed to file a motion to quash the predicate conviction on the basis that an adjudication for possession of a firearm while in possession of a controlled dangerous substance could not be used to enhance an offense , of possession of a handgun by a juvenile to a felony-grade offense; and (3) failed to file a motion to reconsider the disposition.
An accused is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Louisiana Constitution. To prove ineffective assistance of counsel, a defendant must show both that: (1) his attorney’s performance was deficient; and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450 and 94-1361 (La.11/4/94), 644 So.2d 1055. An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.” Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; State v. Serio, 94-131 (La.App. 5 Cir. 6/30/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388. To prove prejudice, the defendant must demonstrate that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068.
An ineffective assistance of counsel claim is best addressed through an application for post-conviction relief filed in the trial court wherein a full evidentiary hearing can be conducted. However, when the record contains | ^sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595. In this case, the appellate record is thorough and sufficient for this Court to address D.W.’s claims.

Constitutionality of La. R.S. 14:95.8

First, D.W. contends that his trial counsel was ineffective for having failed to assert that La. R.S. 14:95.8 is unconstitutional in that it violates Article I, Section 11 of the Constitution of the State of Louisiana and the Fourteenth Amendment of the Constitution of the United States.[4] He contends that if this statute were declared unconstitutional, there would be no basis for an adjudication. D.W. further argues that the statute restricts a juvenile’s right to carry a handgun without sufficient state interest to infringe upon a juvenile’s right to do so. Additionally, D.W. contends that *1192 the statute was not exempted from Article I, Section 11 of the 1974 Constitution and that it does not pass strict scrutiny under the 2012 provision of this article. He further asserts that all juveniles are not treated equally, as some juveniles are allowed to carry handguns and some are not. D.W. further argues that since the statute classifies an offender based on age, it presumptively denies equal protection of the laws and is therefore presumed unconstitutional.
The right to bear arms is established by the Second Amendment to the United States Constitution and Article I, Section 11 of the Louisiana Constitution. The State of Louisiana is entitled to regulate that right for legitimate state purposes, such as public health and safety. State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324, 1333; State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 70, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
La. Const. Art. 1, Section 11 currently provides that the right of each citizen to keep and bear arms is fundamental and shall not be infringed, and that any restriction on this right shall be subject to strict scrutiny. La. Const. Art. 1, Section 11 was amended by Acts 2012, No. 874, Section 1, and approved on November 6, 2012. La. Const. Art. 1, Section 11 formerly provided that the right of each citizen to keep and bear arms shall not be abridged, but this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person. D.W. committed this offense on October 27, 2012, before the new amendment was approved, and therefore, it is unclear as to whether the new amendment would apply. However, under the following analysis, we find that La. R.S. 14:95.8 is constitutional under either version of the law.[5]
A statute is presumed to be constitutional, and the burden of clearly establishing unconstitutionality rests upon the party who attacks the statute. A statute should be upheld whenever possible. State v. Muschkat, 96-2922 (La.3/4/98), 706 So.2d 429, 432. Neither the Louisiana Supreme Court nor this Court has determined whether La. R.S. 14:95.8 is constitutional or unconstitutional.
*1193 Federal courts have found that similar statutes do not violate the Second Amendment and are constitutional. In United States v. Rene E., 583 F.3d 8 (1st Cir.2009), cert. denied, 558 U.S. 1133, 130 S.Ct. 1109, 175 L.Ed.2d 921 (2010), a juvenile was charged with possessing a handgun in violation of 18 U.S.C., Section 922(x)(2)(A). The juvenile entered a conditional guilty plea. On appeal, he argued, inter alia, that the statute violated his rights under the Second Amendment. The U.S. Court of Appeals, First Circuit, held that the statute did not violate the Second Amendment. It found that the law was a narrowly drawn federal prohibition on handgun possession by juveniles that contained exceptions for self- and other-defense in the home, National Guard duty, and hunting, among others. The First Circuit stated that it had evaluated this prohibition in light of state laws regulating juvenile access to handguns on the ground that their possession could pose a serious threat to public safety. It also stated that it had evaluated evidence which showed that the founding generation would have regarded such laws as consistent with the right to keep and bear arms. Therefore, the court concluded that the law, with its narrow scope and its exceptions, did not offend the Second Amendment.[6] Id. at 16.
The First Circuit also noted that handgun possession by juveniles was banned by federal law in 1994 in the Youth Handgun Safety Act, and that the act was aimed at preventing juvenile misuse of handguns and associated crime. Id. at |1813. The federal ban on handguns was part of a longstanding practice of prohibiting certain classes of individuals from possessing firearms — those whose possession posed a particular danger to the public. Id. at 15. The court lastly recognized that the U.S. Supreme Court had held repeatedly that the rights of minors were not commensurate with those of adults because of their inability to make informed and mature decisions. Id. at 16 n. 8. See also, Dozier v. State of Indiana, 709 N.E.2d 27, 31 (Ind. Ct.App.1999); National Rifle Ass’n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 700 F.3d 185 (5th Cir.2012).
La. Const. Art. 1, Section 11, provides at the present time that the right of each citizen to keep and bear arms is fundamental and shall not be infringed, and that any restriction on this right shall be subject to strict scrutiny. Under the strict scrutiny test, the state action may be justified only by a compelling state interest, and the state action must be narrowly confined so as to further only that compelling interest. State v. Perry, 610 So.2d 746, 760 (La.1992).
We find that La. R.S. 14:95.8 meets the strict scrutiny test because it is narrowly tailored to address the compelling state interest of protecting the public’s safety by attempting to curb juvenile gun violence with reasonable, limited restrictions. The statute is narrowly tailored in that it contains several exceptions which are found in La. R.S. 14:95.8C, including exceptions for hunting and target shooting *1194 at an established range. Juveniles who have permission from their parents are exempted from the statute. Further, the statute is narrowly tailored in that it only applies to individuals under the age of 17, and it criminalizes only actual possession on one’s person, and not constructive possession. See State in the Interest of R.D., 12-619 (La.App. 4 Cir. 10/3/12), 126 So.3d 504, 2012 WL 4711876, writ denied, 12-2495 (La.4/19/13), 111 So.3d 1030.
| U)Based on the foregoing, we find that La. R.S. 14:95.8 does not violate the Second Amendment or La. Const. Art. 1, Section 11, and is constitutional. We therefore conclude that D.W.’s trial counsel was not ineffective for failing to raise this issue in the trial court. This assignment of error is without merit.
D.W. next argues that La. R.S. 14:95.8 is unconstitutional because it violates equal protection of laws in that it discriminates against individuals on the basis of age. The Fourteenth Amendment to the United States Constitution, and Article I, Section 3 of the Louisiana Constitution provide that-no person shall be denied the equal protection of law. Equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar advantage of a “suspect” class. Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520(1976).
First, as discussed above, La. R.S. 14:95.8 does not impermissibly interfere with Second Amendment rights. Secondly, age is not a “suspect” classification. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). Government may discriminate on the basis of age without offending the constitutional guarantee of equal protection, provided that such age classification in question is rationally related to a legitimate state interest. Id. at 83-84. Because La. R.S. 14:95.8 is rationally related to the legitimate state interest of protecting the public’s safety by reasonably attempting to curtail juvenile gun violence, the statute does not violate equal protection guarantees and is therefore constitutional. We further find that D.W.’s trial counsel was not ineffective for failing to raise this issue in the trial court. This assignment of error is without merit.

12(Motion to Quash

Next, D.W. contends that his trial counsel was ineffective for failing to file a motion to quash the predicate conviction. He contends, that the predicate offense alleged in the petition could not serve to enhance the instant offense. D.W. asserts that the State failed to prove that a prior adjudication for a violation of La. R.S. 14:95E was a proper predicate for enhancement of an adjudication for a violation of La. R.S. 14:95.8.
The record reflects that the State claimed a prior Orleans Parish conviction of La. R.S. 14:95.8 as the predicate offense. It did not claim a prior conviction of La. R.S. 14:95 E. As discussed in Assignment of Error One above, even though there, were technical errors alleging the prior conviction, a rational trier of fact could have found that the evidence was sufficient to prove the predicate conviction. Therefore, we find that D.W.’s trial counsel was not ineffective for failing to file a motion to quash the predicate conviction. This assignment of error is without merit.

Motion to Reconsider Disposition

D.W. further claims that his trial counsel was ineffective for failing to file a “motion to reconsider the disposition.” He indicates that such a motion should have been filed because his disposition was excessive. It appears that D.W. is arguing that his trial counsel was ineffective for failing to file a motion to modify the dispo *1195 sition. As the State correctly noted, such a motion would have no effect on the merits of the adjudication, and under La. Ch.C. art. 909, the court may modify the disposition at any time. Nevertheless, we find that it is unlikely that a motion to modify the disposition would have succeeded because of D.W.’s extensive criminal history and his refusal to abide by the terms of his probation or parole, as previously discussed in Assignment of Error Three. Given the judge’s ^reasons for disposition, it is highly unlikely that she would have granted such a motion. This assignment of error is without merit.
ERROR PATENT DISCUSSION
In juvenile cases, La.C.Cr.P. art. 920 mandates an error patent review whether or not defense counsel requests it.[7] Our review reveals one error patent that requires corrective action.
The Juvenile Court judge failed to advise D.W. of the two-year delay period for seeking post-conviction relief as mandated by La. C.Cr.P. art. 930.8. We therefore hereby advise D.W. that any application for post-conviction relief, including an application which seeks an out-of-time appeal, must be filed within two years after the adjudication and disposition (conviction and sentence) becomes final under the provisions of La.C.Cr.P. arts. 914 and 922. State in the Interest of T.M., 12-436 (La.App. 5 Cir. 11/27/12), 105 So.3d 969, 974.
CONCLUSION
For the above stated reasons, D.W.’s delinquent adjudication and commitment are affirmed.
AFFIRMED

. Pursuant to Rules 5-1 and 5-2 of the Uniform Rules — Courts of Appeal, the initials of the minor involved will be used to protect the child’s identity. State in the Interest of M.B., 12-547 (La.App. 5 Cir. 1/30/13), 108 So.3d 1237, 1238 n. 1.

. The playground is actually named Nicholson, not Nicholas.

. La. R.S. 14:95.8 provides in pertinent part:
A. It is unlawful for any person who has not attained the age of seventeen years knowingly to possess any handgun on his person. Any person possessing any handgun in violation of this Section commits the offense of illegal possession of a handgun by a juvenile.
B. (2) On a second conviction, the offender shall be fined not more than five hundred dollars and imprisoned with or without hard labor for not more than two years.
[[Image here]]
D. For the purposes of this Section "handgun” means a firearm as defined in R.S. 14:37.2, provided however, that the barrel length shall not exceed twelve inches.
La. R.S. 14:37.2 provides that for purposes of this Section, "firearm” is defined as an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it.

. A letter was sent to the Louisiana Attorney General (AG) on April 2, 2013, informing him that the constitutionality of La. R.S. 14:95.8 was raised in this appeal, and that if his office wanted to brief the issue, the deadline for doing so was May 2, 2013. The letter notified the AG that the letter was sent pursuant to La. R.S. 49:257C, and that it was providing the notice required by La. R.S. 13:4448. The AG’s Office has not filed a brief.

. La. R.S. 14:95.8 was added by Acts 1999, No. 1218, Section 1, and it provides in pertinent part:
A. It is unlawful for any person who has not attained the age of seventeen years knowingly to possess any handgun on his person. Any person possessing any handgun in violation of this Section commits the offense of illegal possession of a handgun by a juvenile.
[[Image here]]
C. The provisions of this Section shall not apply to any person under the age of 17 years who is:
(1) Attending a hunter’s safety course or a firearms safety course.
(2) Engaging in practice in the use of a firearm or target shooting at an established range.
(3) Hunting or trapping pursuant to a valid license issued to him pursuant to the laws of this state.
(4) Traveling to or from any activity described in Paragraph (I), (2), or (3) of this Subsection while in possession of an unloaded gun.
(5) On real property with the permission of his parent or legal guardian and with the permission of the owner or lessee of the property.
(6) At such person’s residence and who, with the permission of such person's parent or legal guardian, possesses a handgun.
(7) Possessing a handgun with the written permission of such person’s parent or legal guardian: provided that such person carries on his person a copy of such written permission.
D. For the purposes of this Section "handgun” means a firearm as defined in R.S. 14:37.2, provided however, that the barrel length shall not exceed twelve inches.

. In its analysis, the First Circuit in United States v. Rene E., pointed out that for a long time the states were engaged in regulating firearms, including their transfer to and possession by juveniles. It noted that some states criminalized the mere possession of handguns by juveniles, citing Glenn v. State, 10 Ga.App. 128, 72 S.E. 927 (1911), where a Georgia court held that a ban on juvenile possession of handguns did not violate the Georgia constitution, and Biffer v. City of Chicago, 278 Ill. 562, 116 N.E. 182, 184-85 (1917), where the Illinois Supreme Court held that a Chicago ordinance that required individuals to obtain permits to purchase concealable weapons, including handguns, but denied such permits to all minors, did not violate either the Illinois or the U.S. Constitution. United States v. Rene E., 583 F.3d at 14-15.

. State ex rel. Z.S., 01-1099 (La.App. 5 Cir. 2/26/02), 811 So.2d 1003, 1008.