# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-584

**STATE OF LOUISIANA**

**VERSUS**

**DESMOND YOUNG**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 62740
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Sharon Darville Wilson, Judges.

**SENTENCE AFFIRMED.**

**Mary Constance Hanes**
**Louisiana Appellate Project**
**P.O. Box 4015**
**New Orleans, LA 70178**
**(504) 866-6652**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Desmond Young**

**Donald Dale Landry**
**Fifteenth Judicial District Attorney**
**Aaron M. Meche**
**Assistant District Attorney**
**100 North State Street, Suite 215**
**Abbeville, LA 70510**
**(337) 898-4320**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**GREMILLION, Judge.**

Defendant, Desmond Young, was convicted of attempted molestation of a juvenile under thirteen, in violation of La.R.S. 14:81.2(D) and La.R.S. 14:27. Defendant appeals his sentence of ten years at hard labor. Previously, in *State v. Young*, 20-94 (La.App. 3 Cir. 10/21/20), 305 So.3d 125, this court vacated Defendant's sentence as indeterminate because the trial court ordered Defendant to wear an ankle monitor upon his release from prison without specifying the length of time Defendant must wear the monitor. Upon remand, Defendant was resentenced on May 31, 2022. The trial court again ordered Defendant to serve ten years at hard labor, concurrently with any other sentence Defendant is currently serving. The trial court also ordered Defendant to register as a sex offender and be subject to ankle monitoring for the remainder of his life.

Defendant assigns as error:

1. The trial court abused its discretion in imposing the requirement that Desmond Young wear an ankle monitor for the rest of his life after serving his sentence of ten years for attempted molestation of a juvenile under the age of thirteen; the trial court erred in construing La.R.S. 14:81.2(D)(3) to require imposition of electronic monitoring for life on offenders who are convicted of only the attempt to commit the crime.

2. In the alternative, defense counsel rendered ineffective assistance in failing to challenge the constitutionality of La.R.S. 14:81.2(D)(3) as the requirement of electronic monitoring for life violates the Fourth Amendment of the U.S. Constitution and Article 1, § 5 of the Louisiana Constitution insofar as it requires imposition of electronic monitoring on offenders who have completed their sentences and it provides no mechanism for them to request removal from the requirement.

For the following reasons, we find assignment of error number one lacks merit, and assignment of error number two is relegated to post-conviction relief.

## FACTS

Defendant, age eighteen at the time of the offense, was originally charged with one count of first degree rape of a child under the age of thirteen, a violation of

La.R.S. 14:42. Pursuant to a plea agreement, Defendant pled guilty to the responsive crime of attempted molestation of a juvenile under the age of thirteen. The following factual basis was presented at Defendant's guilty plea:

> Your Honor, this is an amended charge. If this matter would have gone to trial, the State would have proved beyond a reasonable doubt that on November 3rd, 2017, Mr. Young was caught in the act of attempting to molest a seven-year-old individual.

> The State also asserted in its Sentencing Memorandum that Defendant was an eighteen-year-old who lived with his aunt and uncle. The victim was an eight-year-old boy with severe autism. It was stated that the uncle found Defendant straddling the boy with his penis lying on top of the boy's naked buttocks.

*Young*, 305 So.3d at 126.

## ASSIGNMENT OF ERROR NUMBER ONE

As he argued in his original appeal, Defendant contends the trial court abused its discretion by ordering him to wear an ankle monitor after serving his sentence of ten years for attempted molestation of a juvenile under the age of thirteen. We previously found this assignment of error was pretermitted by our finding that the sentence must be vacated as indeterminate and remanded for resentencing. *Young*, 305 So.3d 125. At the resentencing hearing, defense counsel objected to the "ankle monitoring" for all of the reasons set forth at the original sentencing. On appeal of the resentencing, appellate counsel again challenges the legality of the ankle monitoring requirement.

Defendant argues the trial court erroneously interpreted La.R.S. 14:81.2(D)(3) to require electronic monitoring for life of a person convicted of the *attempted* offense rather than the *completed* offense.[1] At the original sentencing hearing, defense counsel objected to the recommendation in the PSI that Defendant be subject

---

[1]Although La.R.S. 14:81.2(D)(3) requires "electronic monitoring," the trial court in the present case ordered "ankle monitoring." Neither party disputes that ankle monitoring is the same as electronic monitoring.

to ankle monitoring for the rest of his life. Defense counsel acknowledged that the relevant portion of La.R.S. 14:81.2(D) provides as follows:

> D. (1) Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence.
>
> . . . .
>
> (3) Upon completion of the term of imprisonment imposed in accordance with Paragraphs (1) and (2) of this Subsection, the offender shall be monitored by the Department of Public Safety and Corrections through the use of electronic monitoring equipment for the remainder of his natural life.

Defense counsel argued that because the ankle monitoring provision does not specifically state that it applies to a sentence imposed under La.R.S. 14:27, the provision does not apply to an attempt. Defense counsel argued:

> So clearly D(3) only applies to people who are convicted of the completed crime. And therefore, the rule of lenity says that that requirement of ankle monitoring does not apply to Mr. Young for the rest of his life.
>
> We certainly acknowledge that he - - part of the agreement was that he would register as a sex - - as a Tier 3 sex offender for the rest of his life and that he will be subject to the supervised relief for the rest - - release for the rest of his life. But there was no discussion between Mr. Ghio and myself about ankle monitoring. Now, I have discussed with Mr. Young if he would like to withdraw his plea and he would not. But we do want to make for the record the argument that that reading of the statute is incorrect.
>
> And there is case law that supports that, too. That's also in my memorandum. That's the case law that says that, if there is a minimum sentence, it doesn't apply to Attempt because of the rule of lenity, because 14:27 controls and there's no mandatory minimum in 14:27. And also, the case law - - the same case law that says, if there is a requirement that the minimum portion of the statute be served without benefits, that does not apply to an attempt, because the attempt basically kicks out the minimum. There is no minimum that applies, so any restrictions on the minimum sentence also don't apply.
>
> So I think that that case law and its interpretation - - it's application of the rule of lenity to statutory interpretation in criminal sentencing would suggest that, as I've said, D(3) can only be read to

3

apply to people who are convicted of the completed crime of Molestation of a Juvenile. And Mr. Young pled guilty to Attempted Molestation of a Juvenile.

Defense counsel argued that La.R.S. 14:81.2(D)(3) specified that it applied when a sentence imposed under sections (1) and (2) was completed but did not specify that it applied when a sentence imposed under La.R.S. 14:27 was completed. Thus, defense counsel argued that the ankle monitoring provision did not specifically apply to a sentence imposed for an attempted molestation of a juvenile under the age of thirteen. In response, the State argued that the language "in the same manner" used in the attempt statue indicated that the ankle monitoring provision would apply to a person convicted of attempted molestation of a juvenile under the age of thirteen.

Defendant was given the opportunity to withdraw his plea if the ankle monitoring provision was not discussed with him prior to his plea, but he declined. After giving reasons for the sentence imposed, the trial court ordered Defendant to serve ten years at hard labor. The trial court informed Defendant that he would have to register as a sex offender for the remainder of his life and would be subject to "supervised release for the rest of [his] life." Finally, the trial court stated that Defendant was to wear an ankle monitor once he was released from the custody of the Department of Corrections. Defense counsel objected to the sentence and specifically objected to the trial court's interpretation of La.R.S. 14:81.2 D(3). At resentencing, the trial court imposed the same sentence, specifying that the ankle monitoring was for life. Defense counsel noted his objection to the ankle monitoring for the reasons set forth at the original sentencing.

*Defendant's Argument in Brief*

Defendant contends there appears to be no cases discussing whether the provision of La.R.S. 14:81.2(D)(3) requiring electronic monitoring for life applies

4

to a person convicted of attempted molestation of a juvenile under the age of thirteen.

Defendant argues the following:

> La.R.S. 14:27(D)(3) provides that a person convicted of attempt "shall be fined or imprisoned or both, in the same manner as for the offense attempted" and "such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both." Mr. Young's trial counsel argued that the phrase "in the same manner" should be strictly read according to the rule of lenity to apply to fines or imprisonment and not to any requirement such as electronic monitoring. Defense counsel analogized the situation to that where the courts had determined that, because La.R.S. 14:27(D)(3) provides only a maximum sentence for a conviction of attempting to commit a crime—and no express statutory minimum sentence—the principles of lenity require that the statute be strictly construed to require no minimum sentence. *See State v. Callahan*, 95-1331 (La. 3/29/96), 671 So. 2d 903, 904. *See also, State v. Chandler*, 09-1286 (La.App. 3 Cir. 5/5/10), 36 So. 3d 1086, 1088, *citing State v. Everett*, 05-214, p. 2 (La.App. 3 Cir. 11/2/05), 916 So.2d 1210, 1212.
>
> Defense counsel also pointed out that La.R.S. 14:27(D)(3) has been interpreted to mean that parole restrictions which apply to a completed offense do not apply when the offense is an attempt, at least in those cases where the completed offense has parole restrictions which apply only to the minimum sentences. *Compare Everett*, 916 So.2d at 1212-13 (distinguishing La.R.S. 14:95.1 which restricts parole for the entire sentence). (In the current case, the trial court stopped the plea proceeding to research the matter before deciding that Mr. Young's sentence would be imposed **with** the benefit of parole, and stated in the sentencing hearing that the sentence would include such benefit.) Defense counsel made the further argument that the legislature specifically included the crime of attempt in La.R.S. 15:542 requiring the registration of sex offenders, and could have specified, if it chose to do so, that La.R.S. 14:81.2(D)(3) applied in cases of attempt. (It is worth noting that La.C.Cr.P. art. 895(H), which sets out extensive requirements for the probation for sex offenders, does not mention electronic monitoring at all.) The trial court did not provide any reasons for rejecting the defense's arguments and concluding that La.R.S. 14:81.2(D)(3) applies to persons convicted of attempt.

(footnotes omitted).

*State's Argument in Brief*

The State asserts the trial court did not abuse its discretion in sentencing Defendant to wear an ankle monitor for the remainder of his natural life, noting that the trial court is in the best position to consider the aggravating and mitigating

circumstances. The State points out that La.R.S. 14:27(D)(3) requires a defendant convicted of an attempt to be sentenced "in the same manner as for the offense attempted." The State argues:

> In *Patterson*, the defendant was convicted of attempted armed robbery and was sentenced "in the same manner" as for a completed armed robbery. *State v. Patterson*, 50964 (La. 6/28/71), 259 La. 508, 250 So.2d 721. In cases of attempted armed robbery, the phrase "in the same manner" means that except for the term of imprisonment, which is specifically provided for, the other aspects of the fine or imprisonment shall be "in the same manner" as provided for armed robbery. *Id.* To hold otherwise would render the words "in the same manner" virtually meaningless, for there is no other provision of the armed robbery punishment to which the attempt can be likened." *Id.*

## DISCUSSION

There is no jurisprudence discussing whether a trial court is authorized to order a defendant convicted of attempted molestation of a juvenile under the age of thirteen to wear an ankle monitor for the rest of his life. As stated above, the pertinent penalty provision states:

> (1) Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence.

> (2) Whoever commits the crime of molestation of a person with a physical or mental disability shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence.

> (3) Upon completion of the term of imprisonment imposed in accordance with Paragraphs (1) and (2) of this Subsection, the offender shall be monitored by the Department of Public Safety and Corrections through the use of electronic monitoring equipment for the remainder of his natural life.

La.R.S. 14:81.2(D) (in pertinent part).

The provision requiring electronic monitoring was enacted in 2006 by 2006 La. Acts No. 103 § 1 and 2006 La. Acts. No. 325 § 2. The penalty provisions for

6

molestation of a juvenile under the age of thirteen, aggravated incest of a victim under the age of thirteen, sexual battery of a victim under the age of thirteen, second degree sexual battery of a victim under the age of thirteen, oral sexual battery of a victim under the age of thirteen, and pornography involving juveniles when the victim was under the age of thirteen, were all amended to provide for lifetime electronic monitoring upon release from imprisonment. Several courts have affirmed sentences wherein lifetime electronic monitoring was imposed as part of the defendant's sentence: *State v. Jack*, 51,428 (La.App. 2 Cir. 6/21/17), 224 So.3d 492, *writ denied*, 17-1281 (La. 4/27/18), 239 So.3d 838 (forty-nine counts of pornography involving juveniles under the age of thirteen); *State v. Clifton*, 17-538 (La.App. 5 Cir. 5/23/18), 248 So.3d 691 (sexual battery of a juvenile under the age of thirteen); *State v. Klein*, 18-22 (La.App. 4 Cir. 8/22/18), 252 So.3d 973, *writ denied*, 18-1569 (La. 4/15/19), 267 So.3d 1125 (possession with the intent to distribute pornography involving juveniles under the age of thirteen); and *State v. Callahan*, 18-213 (La.App. 1 Cir. 9/24/18) (unpublished opinion),[2] *writ denied*, 18-1760 (La. 5/28/19), 273 So.3d 313 (sexual battery on a victim under the age of thirteen).

Considering the legislature's decision to amend the above penalty provisions to require lifetime electronic monitoring and considering the cases wherein lifetime monitoring has been upheld for completed offenses, the question is whether the legislature intended the lifetime electronic monitoring requirement to apply to defendants convicted of attempting the above sexual offenses. As stated previously, the pertinent penalty provision for the attempt in this case is the following:

> (D)(3) In all other cases he shall be fined or imprisoned or both, *in the same manner* as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half

---

[2]This case is cited at 2018 WL 4562174.

of the longest term of imprisonment prescribed for the offense so attempted, or both.

La.R.S. 14:27(D)(3) (emphasis added).

Defense counsel asserts that "in the same manner" should be "strictly read according to the rule of lenity to apply to fines or imprisonment and not to any requirement such as electronic monitoring." The supreme court, however, has held that the phrase "in the same manner" means "at hard labor" and "without benefit of parole, probation or suspension of sentence."[3] *State ex rel. Sullivan v. Maggio*, 432 So.2d 854, 855-56 (La.1983). The supreme court explained:

> The defendant in the present case argues, as did Patterson, that, because criminal statutes should be strictly construed, imprisonment "in the same manner" must be interpreted to refer only to hard labor and not to loss of eligibility for parole, probation and suspension of sentence. After reconsidering the question, we conclude that this court adopted the correct statutory construction in Patterson for the reasons hereinafter set forth.
>
> It is an ancient rule of statutory construction and an oft repeated one that penal statutes should be strictly construed against the government or parties seeking to exact statutory penalties and in favor of persons on whom such penalties are sought to be imposed. 3 Sutherland Statutory Construction § 59.03 (1974); Lafave and Scott, Criminal Law § 10 (1972). This rule of strict construction grew out of harsh conditions during the period in England before the 19th century when hundreds of crimes, many relatively minor, were punishable by death. Lafave and Scott, *supra*. See also Hall, Strict or Liberal Construction of Criminal Statutes, 48 Harv.L.Rev. 748, 750 (1935). However, with the decline in the severity of punishment and with the introduction of procedural safeguards, the rule of strict construction has become less favored. See, Lafave and Scott, *supra*; Sutherland, *supra*, § 59.07.
>
> In fact, numerous state legislatures, frustrated in the field of criminal law, have abrogated or modified the rule. Sutherland, *supra*. Some states expressly repudiated the common law rule of construction and substituted a rule calling for a construction of criminal laws according to the "fair import of their terms." See, e.g. Cal.Penal Code § 4. Other states have gone even further and have opted for a "liberal" construction of their criminal laws. See Lafave and Scott, *supra*, n. 23, and states listed therein.

---

[3]In *State v. Benoit*, 17-187 (La.App. 5 Cir. 12/29/17), 237 So.3d 1214, the fifth circuit found the requirement that a defendant convicted of aggravated incest pay the victim's reasonable costs of counseling also applied to a defendant convicted of attempted aggravated incest.

Louisiana took what might be termed a "middle ground" approach somewhere between the old common law rule and the "liberal" rule adopted by other states. At the time of the drafting of the comprehensive criminal code, the members of the Louisiana State Law Institute refused to embrace a rule of either strict or liberal construction. See Morrow, the Louisiana Criminal Code of 1942—Opportunities Lost and Challenges Yet Unanswered, 17 Tul.L.Rev. 1, 4–12 (1942). Instead the Law Institute recommended, and the legislature subsequently enacted, a rule of construction which provides:

> The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.

La.R.S. 14:3.

Thus, the courts are not empowered to extend by analogy the terms of a criminal provision to cover conduct not included within the crime definition of the criminal code. See, *State v. Brown*, 378 So.2d 916, 918 (La.1980). However, the rule of interpretation and its legislative history indicate that Louisiana courts are required to give the articles of the criminal code a "genuine construction, according to the fair import of their words," rather than a strict interpretation, if the Code is not thereby extended by analogy to create new crimes.

Applying these precepts to the instant case, we conclude that the basic holding of Patterson remains valid today. Giving the criminal attempt article a genuine rather than a strict interpretation, a person convicted of attempted armed robbery must be imprisoned "at hard labor" and "without benefit of parole, probation or suspension of sentence."

Armed robbery is a pernicious offense. The use of a dangerous weapon creates a great risk of emotional and physical harm to the victim, to witnesses, and, at times, even to the offender. Although firm figures are difficult to obtain, it would appear that robbery killings have increased four- or fivefold since the early 1960s. Silberman, Criminal Violence, Criminal Justice, Chapter I, p. 4 (1978). The Louisiana legislature has indicated a great concern for the crime of armed robbery in this state. In 1962, the penalty for armed robbery was enhanced to provide a maximum term of ninety-nine years at hard labor "without benefit of parole, probation or suspension of sentence." La.R.S. 14:64. The legislature also has shown particular concern over killings occurring during armed robberies by classifying as capital murder a specific intent killing during the perpetration or attempted perpetration of an armed robbery. La.R.S. 14:30.

*Attempted* armed robbery is only slightly less reprehensible than the completed offense. Force or intimidation of a victim with a dangerous weapon is usually involved. Consequently, the genuine risks of emotional and physical harm created by an attempted armed robbery make it equally as dreadful as a completed offense. Thus, it would seem logical to conclude that the legislature, by stipulating that the same kind of penalty shall accompany both crimes, intended to subject those who attempt armed robbery to the same type of enhanced punishment as those who complete the offense, i.e. imprisonment at hard labor without parole eligibility. This view is also encouraged by the fact that the legislature, cognizant of its pre-existing requirement that a would-be armed robber must be punished "in the same manner" as an actual armed robber, failed to exempt those who only attempt armed robbery when it enhanced the penalty provided for the completed offense.

The present case serves well to illustrate that most of the anti-social elements of armed robbery are usually involved in an attempt of the crime. Relator Sullivan entered into a plan to rob Mr. Leon Ford by physically removing Ford from his home and striking Ford on the head with a club. As Ford walked out of his house, one of two men lying in wait struck Ford in the head, knocking him to his knees. Although he suffered a severe blow, Ford retained consciousness. Because he was still conscious and about to recover, Ford's assailants fled. Thus the offenders were unable to complete the theft of Ford's belongings. The offenders' conduct in the present case is the type of act which the legislature sought to deter by stiffening the penalty for armed robbery through abrogation of parole eligibility. The fact that a theft did not occur during the violence is relatively insignificant considering the injuries inflicted upon Mr. Ford and the graver risks threatened.

The armed robbery article of the criminal code, provides that any person who commits the crime of armed robbery "shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence." La.R.S. 14:64. The attempt article subjects persons to punishment "in the same manner as for the offense attempted." La.R.S. 14:27 D(3). A realistic and genuine construction of the two provisions requires that persons who attempt armed robbery shall be punished at hard labor without benefit of parole, probation or suspension of sentence.

*Id.* at 856-57.

Applying this same type of analysis to the present case, we find that a realistic and genuine construction of the penalty provisions at issue necessitates a finding that electronic monitoring applies to defendants convicted of attempt. The same type of legislative concerns described in *Sullivan* have been voiced by the legislature

regarding sexual offenders. When the legislature enacted the electronic monitoring provision for molestation of a juvenile under the age of thirteen, it stated the following:

> The Louisiana Legislature has long recognized the need to protect our most innocent and defenseless citizens and has enacted statutory provisions to protect children from sexual offenders and predators. Louisiana has some of the strictest penalties for sex offense violations and some of the most extensive provisions for sexual offender and sexual predator registration and notification in the United States. The Louisiana Legislature recognizes the tragedy associated with the story of Jessica Lunsford who at the age of nine was abducted, abused, and murdered by a convicted sexual offender. Motivated by the tragedy associated with Jessica Lunsford, the Florida Legislature enacted the Jessica Lunsford Act which provided for a minimum twenty-five-year sentence for child molesters and lifetime monitoring following incarceration. The Louisiana Legislature in enacting the provisions of this Act seeks to incorporate those provisions into the Louisiana Law.

2006 La. Acts. No. 325, § 1.

The legislature's concern for protecting citizens from sex offenders is also evident in its 2006 enactment of the law providing for Sex Offender Assessment Panels (SOAP.) La.R.S. 15:560 *et seq.* The same year the legislature added the electronic monitoring requirement to molestation of a juvenile under the age of seventeen, the legislature enacted the SOAP provisions. The legislature expressed its findings in La.R.S. 15:560:

> A. The Legislature of Louisiana has long recognized the need to protect our most innocent and defenseless citizens from sex offenders, sexually violent predators, and child predators and has enacted statutory provisions to provide one of the most extensive sex offender registration and notification laws in the United States.

> B. The legislature has enacted provisions requiring lifetime registration of sexually violent predators and has legislatively created the sexually violent predator commission as the entity which would determine which offenders are sexually violent predators. However, those provisions have rarely been utilized.

> C. The legislature finds that sexually violent predators and child sexual predators often pose a high risk of engaging in sex offenses and crimes against victims who are minors after being released from

11

incarceration or commitment and that the protection of the public from sexually violent predators is of paramount governmental interest.

D. In consideration of the potentially high rate of recidivism and the harm which can be done to the most defenseless members of the public by sexually violent predators and child sexual predators, the state has a compelling interest in ensuring compliance with the provisions of law regarding sex offender registration and notification to protect the public from harm as those offenders are released from incarceration and are returned to their communities.

E. The state also has a compelling interest in using its limited resources wisely and monitoring those offenders who pose the greatest risk to the health and safety of our citizens.

F. Therefore, it is the policy of this state to facilitate the identification of those offenders who are sexually violent predators and child sexual predators and to require that those offenders register as sex offenders for life to ensure compliance with those registration and notification requirements by enactment of sex offender assessment panels to evaluate all sex offenders prior to their release from incarceration as provided for in this Chapter.

The legislature has made clear its intent to protect the public from the perpetration of sex offenses. The SOAP panels created within the Department of Public Safety and Corrections are required to:

[E]valuate every sex offender and child predator who is required to register pursuant to the provisions of R.S. 15:542 and who is to be released from the custody of the Department of Public Safety and Corrections on an order of the committee on parole or the Department of Public Safety and Corrections, office of adult services, or upon expiration of his sentence to determine if he is a sexually violent predator or a child sexual predator in accordance with the provisions of R.S. 15:560.1.

La.R.S. 15:560.2(F). For purposes of the SOAP provisions, a "sex offense" includes the *attempted* perpetration of certain sex offenses, including molestation of a juvenile. La.R.S. 15:560.1(1) and La.R.S. 15:541(24)(a). Thus, for purposes of SOAP evaluations, defendants convicted of attempted sex offenses are treated the same as those convicted of the completed offense.[4]

---

[4]One of the effects of the SOAP evaluation is that a defendant must be electronically monitored upon his release from prison. La.R.S. 15:560.3(A)(3) and 15:560.4. Unlike the statutory requirement for electronic monitoring set forth in La.R.S. 14:81.2(D)(3), the SOAP

Considering all of the above, we find the legislature intended the electronic monitoring requirement set forth in La.R.S. 14:81.2(D)(3) to apply to a person convicted of attempted molestation of a juvenile under the age of thirteen. Accordingly, the trial court did not err in finding such requirement applied to Defendant.

## ASSIGNMENT OF ERROR NUMBER TWO

Even if this court finds the electronic monitoring requirement applies to a defendant convicted of attempted molestation of a juvenile, Defendant asserts his trial counsel was ineffective for failing to challenge the constitutionality of the electronic monitoring provision. Defendant contends:

> [T]he statute's requirement of electronic monitoring for life violates the Fourth Amendment of the U.S. Constitution and Article 1, § 5 of the Louisiana Constitution insofar as it requires imposition of electronic monitoring on offenders who have completed their sentences and it provides no mechanism for them to request removal from the requirement.

Defendant argues that if his counsel had challenged the constitutionality of the electronic monitoring provision, "the district court would have concluded that the statute constitutes an unreasonable search under the Fourth Amendment of the U.S. Constitution and Article 1, § 5 of the Louisiana Constitution under the totality of the circumstances."

It is well-settled "'that a constitutional challenge may not be considered by an appellate court unless it was properly pleaded and raised in the trial court below.'" *State v. Hill*, 20-323, p. 3 (La. 10/20/20), 341 So.3d 539, 543, (quoting *State v. Hatton*, 07-2377, p. 13 (La. 7/1/08), 985 So.2d 709, 718), *cert. denied*, ___ U.S. ___,

---

provisions require an evaluation, a recommendation from the panel, and then a contradictory hearing in front of the sentencing court before the sexual offender is subject to the electronic monitoring requirements set forth in La.R.S. 15:560.4. La.R.S. 15:560.2. It is not clear how the statutory requirement for electronic monitoring and the SOAP provisions relate to one another.

142 S.Ct. 311 (2021). Trial counsel did not raise a constitutional challenge to the ankle monitoring provision in the trial court. Defendant contends, however, "[a]t least one other appellate court in Louisiana has addressed a claim of ineffective assistance in a case such as the present one where the claim is based on the assertion that defense counsel failed to challenge the constitutionality of a criminal statute in the district court." In *State In the Interest of D.W.*, 13-114 (La.App. 5 Cir. 9/18/13), 125 So.3d 1180, *writ denied*, 13-2478 (La. 4/4/14), 135 So.3d 639, the fifth circuit addressed whether trial counsel was ineffective for failing to challenge the constitutionality of La.R.S. 14:95.8 in the trial court.

The court in *D.W.* stated the following:

> An accused is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Louisiana Constitution. To prove ineffective assistance of counsel, a defendant must show both that: (1) his attorneys performance was deficient; and (2) the deficiency prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Soler,* 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, *writs denied,* 94-0475 (La.4/4/94), 637 So.2d 450 and 94-1361 (La.11/4/94), 644 So.2d 1055. An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064; *State v. Serio,* 94-131 (La.App. 5 Cir. 6/30/94), 641 So.2d 604, 607, *writ denied,* 94-2025 (La.12/16/94), 648 So.2d 388. To prove prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068.

> An ineffective assistance of counsel claim is best addressed through an application for post-conviction relief filed in the trial court wherein a full evidentiary hearing can be conducted. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. *State v. Taylor,* 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595. In this case, the appellate record is thorough and sufficient for this Court to address D.W.'s claims.

*D.W.*, 125 So.3d at 1191.

14

The court in *D.W.* found there was no need to relegate the ineffective assistance of counsel claim to post-conviction relief as the record was sufficient to review the claim. Likewise, appellate counsel contends the present appellate record is sufficient to review Defendant's ineffective assistance of counsel claim. However, we find the record is not sufficient to determine whether Defendant's constitutional challenge has merit; thus, the record is not sufficient to determine the first prong of the ineffective assistance of counsel analysis–that trial counsel's performance was defective.

Even though this court's original opinion vacated the sentence as indeterminate and remanded for resentencing, this court noted that the constitutionality of the ankle monitoring requirement may be an issue:

> In our errors patent review, we also note Defendant failed to allege below the constitutionality of the lifetime requirement for ankle monitoring found in La.R.S. 14:81.2(D)(3). Several states have found such lifetime requirements to be violative of the Fourth Amendment restriction against unreasonable searches. *See Grady v. North Carolina*, 575 U.S. 306, 135 S.Ct. 1368, 191 L.Ed.2d 459 (2015) (wherein the United States Supreme Court specifically held GPS monitoring of a sex offender constitutes a search within the meaning of the Fourth Amendment; *State of North Carolina v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019) and reversed and remanded for further disposition in a North Carolina court's lifetime monitoring sentence. The North Carolina Supreme Court, on remand from the United State Supreme Court, ultimately concluded lifetime monitoring violated the Fourth Amendment. Again, in *Park v. State*, 305 Ga. 348, 825 S.E.2d 147 (2019), the Georgia Supreme Court, in a unanimous opinion, struck down as unconstitutional the statutory requirement that "sexually dangerous predators" who have completed their sentences remain on electronic monitoring for the remainder of their lives.

*Young*, 305 So.3d at 127 n.1.

The record provides no information about the nature and extent of the ankle monitoring such that we could determine if it constitutes an unreasonable search. There are different types of electronic monitoring that transmit different types of information to the state. The record is not sufficient to address Defendant's

ineffective assistance of counsel claim; thus, Defendant's claim is relegated to post-conviction relief.  The trial court must address the constitutional claim in any post-conviction relief motion for ineffective assistance of counsel.

## DECREE

Defendant's sentence is affirmed.  Defendant's claim of ineffective assistance of counsel is relegated to post-conviction relief.

**SENTENCE AFFIRMED**.