686 So.2d 76 (1996)
STATE of Louisiana, Appellee,
v.
Shawn David STEPP, Appellant.
No. 28868-KA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1996.
Rehearing Denied January 16, 1997.
*78 Carso & Noel by Robert S. Noel, II, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Jimmy D. White, Assistant District Attorney, for Appellee.
Before MARVIN, STEWART and CARAWAY, JJ.
CARAWAY, Judge.
Defendant, Shawn David Stepp, was charged by bill of information with armed robbery in violation of La. R.S. 14:64. A unanimous jury found defendant guilty as charged and the trial court sentenced defendant as an habitual offender to 99 years at hard labor, without the benefit of parole, probation or suspension of sentence. The trial court denied an oral motion to reconsider sentence and this appeal ensued. Because defendant's assignments of error regarding the admission of other crimes evidence at trial, the sufficiency of evidence at the habitual offender hearing, and his sentence lack merit, we affirm.

Facts
On February 13, 1994, defendant and his girlfriend, Misty Dawn Falcon, drove to Monroe to visit his brother and sister. Although defendant admitted lying about his intended destination, he claimed that his mother let him borrow her car. Ms. Stepp, however, testified that defendant took her car without permission. Prior to leaving the Stepp home, Falcon furtively stole Ms. Stepp's .38 snub-nosed revolver. Defendant asserted that he was unaware of Falcon's theft of the gun and Falcon corroborated defendant's testimony on this issue. After discovering that his brother and sister were not home, defendant drove Falcon past several of his former residences prior to stopping at the Pinehills Grocery at the corner of Britton Road and Highway 80.
After defendant parked on the side of the store, Falcon entered the store and walked to the candy aisle. After a second customer, Cedric Hotard, came in and went to the restroom, Falcon approached the counter with a candy bar. The cashier, Johnny D. McGough, attempted to enter the transaction on the cash register. When McGough turned to tell Falcon how much she owed, Falcon pointed a gun at him and ordered him to give her the money from the register.
After taking the money that McGough had placed into a bag, Falcon turned to leave as another customer was about to enter the store. While standing at the front door, Falcon turned back towards McGough with the raised gun. McGough, who had retrieved his .357 magnum, fired, striking Falcon in the shoulder. Falcon then went out the front door and around the corner of the store.[1]
When defendant, who was waiting in the car, realized McGough was pursuing Falcon with a gun, he backed out of the parking space and attempted to drive between Falcon and McGough. As Falcon ran for the car, McGough fired again and hit her in the hand. Defendant opened the passenger door, Falcon got into the car, and they drove off.
Contrary to defendant's testimony, McGough testified he heard tires screeching and saw a car with an open passenger door approaching the store's parking lot at high speed. When Falcon began running towards the car, McGough claimed that he shot at the car in an attempt to disable it. He hit the the windshield and the passenger window.
After the suspects drove away, McGough entered the store and told Hotard to call the police. He then went out the front door to check on the customer who had approached *79 the door as Falcon was exiting. While in the front parking lot, he recovered the bag and money and waited for the police to arrive.
Defendant drove to I-20 and was proceeding to a Ruston hospital. After receiving a bulletin describing the car involved in the robbery, Officer Jimmy Richardson spotted the car and began following it; however, he never turned on his emergency lights. Defendant pulled over and surrendered to police. While tending to Falcon, Richardson noticed a brown holster on the front seat of the car. The police later recovered a .38 caliber revolver from the side of the interstate.
Defendant testified that he parked near the side door and Falcon entered the store. Since he was parked on the side of the store, he could not see what occurred at the front entrance. Defendant asserted he did not realize anything was wrong until McGough came out of the side door with a gun and fired at the car and at Falcon. Defendant denied any knowledge of Falcon's plan to rob the store and denied any intent to participate in such a caper. Falcon testified on behalf of defendant and claimed that he did not know she possessed the gun nor did he plan or participate in the robbery. Contrary to Falcon's testimony, the private security guard on watch during her hospitalization testified that Falcon stated that the defendant dared her to rob the store.
After trial, a jury found defendant guilty as charged. Subsequently, the trial court found defendant to be a second felony offender and sentenced him to 99 years at hard labor without the benefit of parole, probation or suspension of sentence.
Assignment of Error No. 1: Other Crimes Evidence
In its case in chief, the state introduced evidence of an armed robbery of a convenience store in Gibsland, Louisiana. The store clerk, Gloria Brackens, testified that in January of 1994, approximately two weeks before the subject robbery, a man entered the store and asked if he could use the restroom. She pointed him in the direction of the restrooms and he went down the candy aisle, got a pack of gum and laid it on the counter. Brackens rang up the sale, and when the cash drawer opened, the man pulled out a gun and told her to give him the money. She gave the man the money; however, as he was leaving the store, his gun went off and Brackens fell to the floor in fear so she did not see how the man left.
Brackens identified the defendant, both in court and in a previous photographic line-up, as the man who held her at gunpoint and demanded money. She also testified that the gun used by Falcon in the Pinehills Grocery robbery appeared to be similar to the one used by the man who robbed her.
Defendant complains that this crime is not a "signature" type crime and thus should not have been admitted as evidence to prove intent. Defendant also argues that the state did not use this other crimes evidence to prove intent, but rather to prejudice the jury by presenting defendant as a "bad man."
La. C.E. art. 404B(1) provides that evidence of other crimes or acts may be admissible as proof of motive, intent, knowledge, identity and absence of mistake or accident. The rationale behind excluding other crimes evidence is to ensure that the defendant will not be presumed guilty of the instant charge because he committed the past offenses or because he is of a general criminal character. State v. Sturdivant, 27,680 (La.App.2d Cir. 2/28/96), 669 So.2d 654.
For evidence of other crimes to be admissible, the state must comply with the notice requirements and limiting instructions set out in State v. Prieur, 277 So.2d 126 (La.1973), prove with clear and convincing evidence that the other acts or crimes occurred and were committed by the defendant, demonstrate that the other acts satisfy one of the requirements listed in Art. 404B(1), and show that the probative value of the evidence outweighs its prejudicial effect. State v. Jackson, 625 So.2d 146 (La.1993). A trial court's ruling on the admissibility of such evidence will not be overturned absent an abuse of discretion. State v. Lee, 25,917 (La.App.2d Cir. 5/4/94), 637 So.2d 656.
Defendant's actions in aiding Falcon at the robbery, though indicating criminal intent, are not conclusive proof of such intent. Defendant *80 claimed at trial that he never dared Falcon to rob the store, that he did not know she had the gun, and that he did not know of her intent to rob the store. Thus, defendant's intent was at issue.
In State v. Smith, 513 So.2d 438 (La.App. 2d Cir.1987), the defendant entered a convenience store with a friend who subsequently robbed the store. The two men left the store together and drove away in the same vehicle. At trial defendant asserted he was unaware of his friend's intent to rob the store and denied any involvement in the crime. This court held that defendant's intent, or lack thereof, was the backbone of his defense. Accordingly, other prior acts became relevant to show that the act for which defendant was on trial was not inadvertent, accidental, unintentional, or without guilty knowledge. This court went on to hold that if the introduction of prior acts is undertaken to prove defendant's intent then there is no requirement the act be a "signature crime," that is a crime precisely similar in most every detail to the present offense. The degree of similarity becomes much more significant when identity, not intent, is the primary issue.
In State v. Kahey, 436 So.2d 475, 488 (La.1983), the supreme court explained the use of evidence of other crimes to prove intent as follows:
The relevancy of other crimes to prove intent stems from the doctrine of chances. The attempt is merely to discover the intent accompanying the act in question; and the prior doing of other similar acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent. The argument is based purely on the doctrine of chances, and it is the mere repetition of instances, and not their system or scheme, that satisfies our logical demand. 2 Wigmore, Evidence, § 302 p. 200 (3rd ed.1940). Professor McCormick has stated that for questions of intent, the purpose of which such evidence may be relevant is to show by similar offenses that the act for which the defendant is on trial was not inadvertent, accidental, unintentional, or without guilty knowledge. See McCormick, Evidence § 190 at 450 (Cleary ed.1972).
The similarity between Falcon's acts in the Pinehills robbery and defendant's acts in the Gibsland robbery supports the state's theory that defendant consulted with Falcon about how to commit the crime. The two convenience store robberies, perpetrated within a few weeks of each other in locations adjacent to I-20, away from defendant's home in Shreveport, and committed with a similar small caliber handgun, have a sufficient degree of similarity in this instance. The chance that the defendant's "getaway" actions in aid of Falcon at the scene of this robbery were performed innocently and on the spur of the moment out of the confusion of the unexpected gun fire of Mr. McGough, is significantly lessened by the showing of his recent similar robbery of the Gibsland store.
With the issue being the intent to participate in the robbery, whether the defendant was the actual robber or merely the getaway driver at Gibsland is not a necessary element for similarity under Art. 404(B). The fact that defendant was the actual robber at the Gibsland store equally lessens the chance of his innocent involvement in the next convenience store robbery. The probative value would be the same if defendant had only been the getaway driver in Gibsland. Thus, the trial court did not abuse its discretion in concluding that the evidence was admissible to prove defendant's intent.
The trial court was also correct in finding that the evidence that defendant committed the prior offense was clear and convincing. Brackens identified defendant in court as the man who committed the Gibsland robbery. Thus, having found that intent was at issue, and that the evidence of the prior crime was relevant to show intent, and that the evidence of the defendant's identity in that case was clear and convincing, the trial court correctly concluded that the probative value of the other crimes evidence outweighed the prejudice to defendant.
Assignment of Error No. 2: Multiple Offender Hearing
Defendant argues that the trial court should not have allowed the state to use his prior conviction of armed robbery in Lafayette *81 Parish, for enhancement purposes in a habitual offender proceeding. He claims that his guilty plea in that case was involuntary because the method employed by the Lafayette Parish trial judge was confusing and disjointed and defendant could not have understood the rights that he waived, in violation of the protections recognized in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
In the Lafayette Parish case, the trial judge accepted defendant's plea at the same time with several other defendants convicted of different crimes. The trial judge informed defendant of the charge to which he pled guilty and the statutory sentencing range. Since defendant was the only person convicted of a felony, the trial judge "Boykinized" him by himself. The judge informed defendant of his right to trial by jury, his right to compel the attendance of and cross-examine witnesses, his loss of the right to appeal, and his right to remain silent. Defendant also affirmed the voluntariness of his plea.
The trial judge in the present case, while admitting the method was not the best method for accepting guilty pleas, still found that the plea and the recognition by defendant of his Boykin rights were satisfactory and could form the basis of the habitual offender proceeding. He concluded that the Lafayette Parish trial judge sufficiently clarified everything relating to defendant, that at no time did defendant respond in a confused manner, and that defendant benefitted from the plea bargain.
When defendant shows an infringement of his rights or an irregularity in the taking of the plea, the burden of proving the constitutionality of the plea shifts to the state. The state, to meet its burden of proof, must then introduce a "perfect" transcript of the taking of the guilty plea. A perfect transcript is one that reflects a colloquy between the judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against selfincrimination, and his right to confront his accusers. If the state introduces anything less than a "perfect" transcript, it is then up to the trial judge to weigh the evidence submitted by the defendant and the state and determine whether the state has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. State v. Shelton, 621 So.2d 769 (La.1993).
The state introduced a perfect transcript. The Boykin colloquy contains the required waiver of the three Boykin rights and includes a clear affirmation by defendant that his guilty plea was voluntary. Accordingly, the state met its burden of proof in the present case, and the trial court was correct in allowing the Lafayette conviction to serve as the basis for the habitual offender proceeding.

Assignment of Error No. 3: Sentencing
Defendant asserts the trial court did not adequately consider mitigating circumstances and that the sentence is unconstitutionally excessive.[2] In reviewing a sentence for excessiveness, we first determine whether there has been compliance with LSA-C.Cr.P. art. 894.1 in the imposition of sentence. If so, a second inquiry is made to determine whether the sentence is too severe given the circumstances of the case and the defendant's background. If the sentence is a needless imposition of pain and suffering and is grossly disproportionate to the seriousness of the offense so as to shock our sense of justice, the sentence is considered unconstitutionally excessive as violative of LSA-Const. Art. 1, § 20. Both inquiries must be made to determine if the sentence imposed is proper. State v. Lobato, 603 So.2d 739, (La. 1992).
Throughout its tortuous evolution, La. C.Cr.P. art. 894.1(C) has retained the requirement that the trial court state for the record considerations taken into account and the factual basis for imposing sentence. La. C.Cr.P. art 894.1(C); See also State v. Smith, 433 So.2d 688 (La.1983); State v. Tracey, 612 So.2d 984 (La.App. 2d Cir.1993).
*82 It is not necessary that the trial court list every aggravating and mitigating factor as long as the record reflects the guidelines of LSA-C.Cr.P. art. 894.1 were adequately considered. State v. Smith, supra.
Prior to imposing sentence, the trial court noted that Falcon was the one who carried out the armed robbery and that defendant was found guilty as a principal. The court went on to mention defendant's prior conviction of two counts of armed robbery and prior charges against defendant, not convictions, of armed robbery in 1988 in West Monroe, Louisiana, simple burglary and simple criminal damage to property, simple theft and criminal mischief, all in Lafayette, Louisiana. The court also stated that defendant had attempted to escape from the Ouachita Parish Prison while awaiting trial for this matter.
While acknowledging that the use of a dangerous weapon was part of the offense, the trial court correctly emphasized the possibility of injury to Hotard and Chandler, two nearby bystanders. The trial court concluded that defendant used his position or status with Falcon, to persuade her to rob the store while he remained in the car and that this failed robbery attempt resulted in permanent physical disabilities to Falcon.
The sentence range for armed robbery is not less than five years and not more than 99 years, to be served at hard labor without the benefit of probation, parole or suspension of sentence. La.C.Cr.P. art. 14:64. Under the habitual offender statute, La. R.S. 15:529.1, defendant is required to be sentenced to not less than one-half and not more than twice the longest term prescribed for the conviction so defendant faced a minimum sentence of 49 and ½ years and a maximum of 198 years.
The trial judge concluded that because of all the factors listed above, defendant should at least serve the maximum sentence for the crime committed. The court did not include any of the additional time allowed under 15:529.1, even though defendant was found to be a second felony offender. The trial court met the requirements of La.C.Cr.P. art. 894.1 by adequately listing the considerations and facts used to determine the sentence. Accordingly, the first part of the two-pronged test for excessiveness of sentence has been satisfied.
We must next determine if the sentence, imposed in compliance with LSA-C.Cr.P.Art. 894.1, is nevertheless unconstitutionally excessive.
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Square, 433 So.2d 104 (La.1983).
In State v. Curtis, 363 So.2d 1375 (La. 1978), a business owner and a hired security guard were transferring money and supplies from a car to the store when two men approached, one armed with a pistol, and took the money. As they were fleeing, shots were exchanged and the security guard was shot in the hand. The Louisiana Supreme Court held that a sentence of 198 years for the defendant, a second felony offender, convicted of armed robbery did not violate LSA-Const. Art. 1, § 20. See also State v. Douglas, 389 So.2d 1263 (La.1980); State v. Weeks, 449 So.2d 1158 (La.App. 2d Cir.1984); State v. DeWoody, 26,502 (La.App.2d Cir. 11/3/94), 645 So.2d 290.
The maximum sentence as a second felony offender is 198 years. The trial court only imposed 99 years, the maximum allowed under the armed robbery statute. It does not appear from the record or the jurisprudence, that the trial court abused its discretion in imposing this sentence. As discussed above, the trial court gave a detailed list of factors considered. Among those factors were the danger to three innocent people, the fact defendant talked Falcon into robbing the store while he remained in the car, and defendant's *83 criminal history involving numerous armed robberies. Accordingly, the trial court met the requirements of La.C.Cr.P. art. 894.1, and the sentence is not constitutionally excessive.

Conclusion
Because defendant's assignments of error lack merit, the conviction and sentence are affirmed for the reasons expressed above.
CONVICTION AND SENTENCE AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, NORRIS, STEWART, GASKINS and CARAWAY, JJ.
Rehearing Denied.
NOTES
[1] Falcon was convicted of this armed robbery and sentenced to 20 years. Her conviction and sentence were affirmed by this court in Docket No. 27,928-KA.
[2] The Louisiana Sentencing Guidelines were repealed by Acts 1995, No. 942, effective August 15, 1995, and thus were not applicable when defendant was sentenced on December 19, 1995.