M. LAUREN LEMMON, Judge Pro Tempore.
^Defendant, Dale Brown, appeals his convictions and sentences for armed robbery and aggravated flight from an officer. For the reasons that follow, we affirm.

PROCEDURAL HISTORY

On February 26, 2014, the Jefferson Parish District Attorney’s Office filed a bill of information charging defendant with one count of armed robbery with a dangerous weapon, a pistol, in violation of La. R.S. 14:64, and with one count of aggravated flight from an officer in violation of La. R.S. 14:108.1. On August 25, 2014, defendant’s charge on count one was amended to omit the portion of being armed with a pistol. After entering a plea of not guilty, defendant proceeded to trial on and was found guilty as charged on both counts on August 26, 2014.
On September 2, 2014, defendant’s Motion for a New Trial was denied, and after waiving delays, defendant was sentenced on count one to seventy-five years at 13hard labor, without the benefits of parole, probation, or suspension of sentence. On count two, defendant was sentenced to two years at hard labor; the sentences were to be served consecutively for a total term of seventy-seven years. This appeal follows.

FACTS

Brelyn Harney was working at Circle K on Lafayette Street in Gretna, Louisiana, on January 5, 2014, when two people came and robbed the store. Two other individuals were also in the store with her. Ms. Harney heard the bell that rings when people enter, so she got up and saw two people with masks on. The people approached her, told her to open the registers, and not to move. She gave them the money from the register, and they also took candy and cigarettes; after they left, she dialed 9-1-1, locked the front door, and waited for the police to arrive.
Lieutenant Donald McCoy testified that he received a call of the armed robbery when he was parked approximately two blocks away from the Circle K. He started canvassing the area and noticed only one vehicle moving. He radioed Sergeant Heintz[1] and recommended that Sergeant Heintz stop that vehicle. Lieutenant McCoy testified that Sergeant Heintz followed the vehicle, and Lieutenant McCoy caught up with them when the suspect vehicle blew a tire and subsequently started to travel slowly. While the suspect vehicle was still travelling at an idle speed, the driver, later identified as ’ defendant, bailed out of the vehicle, and the car went into a ditch. While on foot, defendant started charging towards Sergeant Heintz, and Sergeant Heintz opened fire on defendant. Defendant fell to 14the ground, then got up and jumped a chainflink fence. Lieutenant McCoy chased defendant, set up a perimeter, and called for the K-9 unit.
Sergeant David Heintz testified that he was able to get a visual on the suspect vehicle that had been reported by Lieutenant McCoy. He attempted to stop the vehicle by employing his sirens and over *1267 head blue lights, and by flashing his headlights. The vehicle proceeded, disregarded a red light and continued to travel, while Sergeant Heintz followed with his lights and sirens on. Sergeant Heintz testified that the suspect vehicle did not have its headlights on and was “probably doing about a hundred and ten” miles per hour. The suspect vehicle’s back tire started to shred and defendant had to veer off the shoulder of the road. The occupants of the vehicle started throwing money out the back window and finally slowed down enough so defendant was able to jump out of the-car. Three passengers remained in the vehicle as it continued to roll. Sergeant Heintz testified that when defendant bailed out of the vehicle, he stumbled and then stood back up while holding something black in his hand. Sergeant Heintz believed he shot at defendant three times, fearing that defendant was going to shoot him. Sergeant Heintz later discovered that he shot defendant in the leg.
Paige Brouillette, a Crime Scene Technician with the Gretna Police Department, testified that she assisted in the investigation of the armed robbery. She identified the photographs that she took as well as Supplemental Security Income (“SSI”) paperwork in defendant’s name and defendant’s identification card that had been found in defendant’s car.
Master Patrol Officer Steven Verrett with the K-9 Division testified that he first saw the suspect vehicle when he arrived on the scene where the vehicle had crashed into a tree and three of the suspects were already out of the vehicle. He attempted to locate the fourth individual with his K-9 when defendant emerged from |sbushes and started to run. Officer Verrett gave a verbal command to stop, or else he would send the dog. Defendant did not stop; therefore, Officer Verrett deployed the K-9 to apprehend defendant.
Detective Joseph Elfer, with Gretna Police Department’s Criminal Investigations Division, processed the scene of the robbery. .He viewed video footage from the Circle K surveillance camera and saw a suspect take bags of Life Savers. Detective Elfer later learned that those items were found in defendant’s vehicle. Detective Elfer testified that cigarettes and money stored in a safe in small tubing vessels that were taken from the store were also found in defendant’s vehicle. He testified that he believed defendant was the driver of the vehicle and not one of the two individuals who actually robbed the Circle K.
Shawn Ward was a suspect involved in the armed robbery, and testified that the robbery began when defendant gave him a ride from his home. Ward knew defendant for approximately seven months prior to the robbery. Ward testified that when defendant picked him up, Tramell LaF-rance and Darrin Robin were also in the vehicle. Ward had defendant drop him off at a friend’s house in Marrero and come back later to pick him up. Ward testified that he retrieved a gun from his friend’s house and was armed when defendant picked him around 1:00 or 2:00 a.m.
Ward testified that he asked defendant to take him to Circle K for cigarettes, without a discussion of a robbery. Ward further testified that he and LaFrance entered the Circle K while wearing masks and gloves. Ward indicated that defendant “knew nothing of a robbery that was going to occur,” that he pled guilty one week prior to testifying at defendant’s trial, and that he was sentenced to twenty-five years. Mr. Ward also testified that in a taped phone conversation while he was in prison, he told his friend’s uncle that defendant just gave him a ride. Then, after a brief | firecess at trial, Ward invoked his *1268 right to remain silent and refused to answer any further questions.
Tramell LaFrance testified that he was one of the two people who committed the armed robbery, and that he had pled guilty one week before testifying at defendant’s trial, and the plea was associated with a sentence ranging from fifteen to twenty-five years. LaFrance then invoked his right to remain silent.
Defendant testified that he was thirty-two years old at the time of trial, and he had used both cocaine and marijuana since he was fifteen years old. On the day of the robbery, he was looking for drugs and he ran into LaFrance. LaFrance told Ward that he knew someone that had drugs but defendant would have to drive him there along with Ward and Darrin Robin (the fourth suspect). LaFrance directed defendant to a neighborhood in Gretna, where LaFrance and Ward got out of the car and then returned a few minutes later. Defendant testified LaFrance and Ward got in the car and told defendant to “pull off.” A police ear pulled up behind defendant, but Ward and LaFrance told him to just keep going. Defendant indicated that when the police put their lights on, defendant told his passengers that he was going to pull over, but that Ward “came out with a gun” and told defendant not to stop. Defendant further testified that he continued to drive because he was afraid of the gun; however, once his car’s tire blew out, he jumped out of the vehicle .and ran toward the police with his hands up, and the police started shooting.
Defendant testified that he had no idea that an armed robbery was going to be committed, that he never went into the Circle K, and that Ward and LaFrance never told him they had a gun; he simply gave the men a ride. He further testified that he did not have any prior convictions for violent crimes, and his previous convictions were related to supplying his drug habit.
^COUNSELED ASSIGNMENT OF ERROR NUMBER ONE

The trial court erred in accepting non-unanimous verdicts to convict the defendant of armed robbery and aggravated flight from an officer.

Defendant challenges the constitutionality of La. Const. Art. I, § 17(A) and La. C.Cr.P. art. 782, which allow for non-unanimous jury verdicts. In particular, he argues he should be accorded the same due process that defendants in other states receive, as only Louisiana and Oregon allow a person to be convicted of a felony by less than unanimous jury verdicts.
The State argues that La.C.Cr.P. art. 782(A) has been consistently upheld as constitutional; that because defendant did not raise the claim of constitutionality of La.C.Cr.P. art. 782 in the trial court, he cannot raise it for the first time on appeal; and, that' defendant’s argument is already foreclosed by decisions rendered by the United States Supreme Court and the Louisiana courts.
The record reflects that defendant was convicted by an 11-1 vote. The record also indicates that defendant failed to file a motion to declare unconstitutional the non-unanimous jury verdict portions of either La. Const. Art. I, § 17(A) or La.C.Cr.P. art. 782(A). Additionally, defense counsel did not object to the verdict after it was rendered. This appeal is the first time that defendant argues that the nonunani-mous jury verdict renders the jury verdict invalid.
In order to seek appellate review of an alleged trial court error, a party must make a contemporaneous objection at trial, and he must state the grounds for the objection. La.C.Cr.P. art. 841; State v. Gaal, 01-376 (La.App. 5 Cir. 10/17/01), 800 *1269 So.2d 938, 949, writ denied, 02-2335 (La.10/3/03), 855 So.2d 294. Having failed to raise this alleged error in the trial court, defendant is not entitled to have this issue reviewed and considered by this Court. See State v. Brooks, 12-226, pp. 10-11 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, 613-14, wnt denied, 12-2478 (La.4/19/13), 111 So.3d 1030.
Nevertheless, even if this court found this issue properly before us on appellate review, the Louisiana Supreme Court has long held that non-unanimous jury verdicts for twelve-person juries in non-capital cases are constitutional. State v. Edwards, 420 So.2d 663, 674 (La.1982); State v. Bertrand, 08-2215 (La.3/17/09), 6 So.3d 738, 742-43; State v. Raymond, 08-1204, pp. 23-24 (La.App. 5 Cir. 4/28/09), 13 So.3d 577, 592-93, writ denied, 09-1205 (La.2/5/10), 27 So.3d 296 (holding the trial court did not err in allowing the jury’s non-unanimous verdict of eleven to one).
For the foregoing reasons, this assignment of error is without merit.
COUNSELED ASSIGNMENT OF ERROR NUMBER TWO

The trial court imposed excessive sentences, particularly when it ordered that the sentences be served consecutively to each other; ■the sentences are excessive, cruel and unusual punishment.

Defendant contends that his consecutive sentences are excessive because they are disproportionate to the circumstances of the case and his limited role in the robbery. Defendant further contends the judge failed to articulate a basis for overriding the presumption of concurrent sentences by sentencing him consecutively. Defense counsel indicated that he did not file a motion to reconsider sentence, and argues that if his objection at the time of sentencing is insufficient, then he received ineffective assistance of counsel for the failure of counsel to file the motion.
The State responds that because defendant did not file a motion to reconsider sentence, he is not entitled to a review of the consecutive nature of his sentences, ^Nevertheless, the State argues that the record supports the sentences imposed, noting that higher sentences for similar crimes have been upheld by Louisiana courts.
“Failure to make or file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence for constitutional excessiveness only.” State v. Bolden, 04-1000, p. 3 (La.App. 5 Cir. 3/1/05), 901 So.2d 445, 447, writ denied, 05-2030 (La.4/28/06), 927 So.2d 279. See also La.C.Cr.P. art. 881.1(E). Accordingly, the issue is whether defendant’s sentences are constitutionally excessive. State v. Alvarez, 11-223, p. 4 (La.App. 5 Cir. 11/15/11), 78 So.3d 265, 268, writ denied, 11-2767 (La.4/13/12), 85 So.3d 1245.
Both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution govern whether a sentence is constitutionally excessive and, therefore, invalid. “Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness.” State v. Smith, 01-2574, p. 6. (La.1/14/03), 839 So.2d 1, 4. A “sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.” State v. Nguyen, 06-969 (La.App. 5 Cir. 4/24/07), 958 So.2d 61, 64, writ denied, 07-1161 (La.12/7/07), 969 So.2d 628; State v. Smith, 02A51 (La.App. 5 Cir. 1/14/03), 839 So.2d 165, 167. Furthermore, a “sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice” or makes no *1270 reasonable contribution to acceptable penal goals. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Williams, 98-1146 (La.App. 5 Cir. 6/1/99), 738 So.2d 640, 655, writ denied, 99-1984 (La.1/7/00), 752 So.2d 176.
A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in | insentencing. State v. Anderson, 09-105, pp. 22-23 (La.App. 5 Cir. 10/27/09), 28 So.3d 324, 337, writ denied, 09-2596 (La.5/21/10), 36 So.3d 229. Therefore, a reviewing court may not set aside a sentence in the absence of manifest error of discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330. On appeal, the issue is not whether a different sentence might have been more appropriate, but rather, whether the trial court abused its discretion. Williams, 03-3514 at 16, 893 So.2d at 17. See also State v. Dorsey, 07-67 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130, writ denied, 08-1649 (La.4/17/09), 6 So.3d 786.
Defendant was sentenced to seventy-five years at hard labor for the charge of armed robbery. La. R.S. 14:64(B) provides: “Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.” Therefore, defendant faced a maximum sentence of ninety-nine years on the armed robbery charge.
There is a vast range of sentencing for similarly situated defendants, including harsher sentencing than in the instant case. In State v. Falkins, 04-250, pp. 2-3 (La.App. 5 Cir. 7/27/04), 880 So.2d 903, 906, writs denied, 04-2220 (La.1/14/05), 889 So.2d 266, State ex rel. Simms v. State, 04-2171 (La.5/20/05), 902 So.2d 1045, the defendants were sentenced to ninety-nine years on each count of armed robbery, prior to the filing of the multiple offender bill. Defendant Simms was not one of the two individuals to enter the bank and rob the tellers; rather, he waited outside in the car, ready to drive away. Id. This Court found that a review of jurisprudence demonstrated that maximum sentences of ninety-nine-years have been upheld even in situations where the victims were not physically injured. Id., 04-250 at 11, 880 So.2d at 912. See State v. Carter, 570 So.2d 234 (La.App. 5 Cir.1990), writ denied, 00-0978 (La.12/8/00), 775 So.2d 1079; State v. Douglas, 389 So.2d 1263 (La.1980); State v. Dempsey, 02-1867 (La.App. 4 Cir. 4/2/03), 844 So.2d 1037; State v. Williams, 482 So.2d 1090 (La.App. 3 Cir.1986). This Court found that because the defendant had two prior convictions which showed a propensity for felonious behavior, in light of the circumstances surrounding the armed robberies, the defendant’s extensive and violent criminal records, and other sentences imposed by this Court and other courts on defendants similarly situated, the trial court did not abuse its discretion in sentencing. Id., 04-250 at 13-14, 880 So.2d at 912.
In State v. Stepp, 28,868, p. 1 (La.App. 2 Cir. 12/11/96), 686 So.2d 76, 78, writ denied, 97-0410 (La.6/30/97), 696 So.2d 1006, the defendant acted as the driver while his girlfriend committed an armed robbery. The defendant claimed he had no knowledge that his girlfriend possessed a gun or that she planned to commit a robbery. Id., 28,868 at 3, 686 So.2d at 79. The girlfriend testified on the defendant’s behalf, claiming he did not know she had the gun and that he did not plan or participate in the robbery. Id. Nevertheless, the defendant was convicted and sentenced to ninety-nine years for armed robbery. Id., 28,868 at 9-10, 686 So.2d at 82. In sentencing, the trial judge had considered that *1271 the defendant used his position with his girlfriend to persuade her to rob the store while he remained in the car, and that this failed robbery attempt resulted in permanent physical disabilities to his girlfriend. Id. The appellate court found that the trial judge provided a detailed list of factors considered while sentencing, including danger to three innocent people, the defendant’s criminal history, and that the defendant talked his girlfriend into robbing the store while he remained in the car. Id., 28,868 at 10-11, 686 So.2d at 82-83. Therefore, the court found the trial court did not abuse its discretion when sentencing the defendant. Id.
]12In the instant case, the trial court pointedly stated that defendant, as the eldest of the individuals involved in the robbery, “used [his] position of authority over these two young men.” Furthermore, although he was not billed as a multiple offender, this was not defendant’s first conviction. He had prior convictions for residential burglary, simple burglary, theft, cocaine, and marijuana.
The trial court considered the sentencing guidelines of La.C.Cr.P. art. 894.1 in finding that defendant is in need of correctional treatment in a custodial environment that is most effectively provided by the Department of Corrections, and that “[a]ny lesser sentence that [the trial court] were to give would deprecate the seriousness of [defendant’s] offense.” As in Stepp, supra, the judge noted “that in the commission of the offense [defendant] used [his] position as a more-senior-in-age participant with two significantly younger defendants, one being seventeen years of age.” Further, the judge found defendant “knowingly created a risk of death or great bodily harm to more than one person,” including the store clerk, her boyfriend, and another individual named Donnell.
Considering defendant’s criminal history, the trial judge’s explanation of his sentencing reasoning, the danger posed to innocent bystanders, and defendant’s influence over the younger men who physically entered the store, we find that the trial court did not abuse its discretion in sentencing defendant to seventy-five years for his armed robbery conviction. Additionally, considering the circumstances surrounding defendant’s conviction for aggravated flight from an officer, we do not find the trial court abused its discretion in imposing a two-year sentence for this offense. 'Thus, we do not find defendant’s sentences to be constitutionally excessive.
| ^Defendant next argues, that trial counsel was ineffective because he failed to file a motion to reconsider sentence to preserve the argument regarding the consecutive nature of his sentences for appeal.
An accused is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. To prove ineffective assistance of counsel, a defendant must show both that: (1) his attorney’s performance was deficient; and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055. An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.” Strickland, supra; State v. Serio, 94-131 (La.App. 5 Cir. 6/30/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388. To prove prejudice, the defendant must demonstrate that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
The issue of ineffective assistance of counsel is more appropriately addressed *1272 in an application for post-conviction relief where an evidentiary hearing can be conducted in the trial court. In re D.W., 13-114, pp. 14-15 (La.App. 5 Cir. 9/18/13), 125 So.3d 1180, 1191. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. Id. Here, the record contains sufficient evidence to address this argument on appeal.
Appellate courts, including this Court, have stated that a failure to file a motion to reconsider sentence does not in itself constitute ineffective assistance of 114counsel, but if the defendant can “show a reasonable probability that, but for counsel’s error, his sentence would have been different,” an ineffective assistance claim may be merited. See State v. Pendelton, 96-367, p. 30 (La.App. 5 Cir. 5/28/97), 696 So.2d 144, 159, writ denied, 97-1714 (La.12/19/97), 706 So.2d 450; State v. Meaux, 13-715 (La.App. 3 Cir. 2/26/14), 131 So.3d 1136; State v. Hayes, 97-1526 (La.App. 1 Cir. 5/15/98), 712 So.2d 1019, 1022, writ denied, 99-2136 (La.6/16/00), 764 So.2d 955.
In State v. McIntyre, 91-816, p. 11(La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1076, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753, this Court found that the defendant did not show that there was a reasonable probability that, but for the counsel’s error, his sentence would have been different. There, the defendant simply argued that maximum sentences should be reserved for the most egregious offenders, and his actions did not rise to that level. This Court found that the sentence imposed on the defendant was not the maximum and was toward the low end of the range of the offense.
Here, defendant relies on State v. Hayes, 97-1526 (La.App. 1 Cir. 5/15/98), 712 So.2d 1019, writ denied, 99-2136 (La.6/16/00), 764 So.2d 955, in arguing that he was prejudiced by counsel not filing a motion to reconsider sentence because that failure denied defendant his constitutional right to appeal his sentence. Defendant argues that because of the severity of the sentence, trial counsel’s ineffective assistance in failing to file the Motion for Reconsideration must be addressed in a similar manner as Hayes. This case is clearly distinguishable. In Hayes, supra, the defendant was convicted of felony theft, subsequently found to be a third offender of felony and misdemeanor theft, and none of his crimes involved a dangerous weapon. Id., 97-1526 at 1, 4, 712 So.2d at 1020-22. The defendant was sentenced to life imprisonment. Id. The appellate court found that the life sentence, at his age and with his record, was disproportionate to the harm done and shocked one’s sense of justice. Id., 97-1526 at 5, 712 So.2d at 1022. Hayes’ trial counsel’s failure to object to the life sentence was not a strategic decision, but rather denied the defendant’s right to appeal; therefore, the'court found merit in the defendant’s ineffective assistance of counsel claim. Id., 97-1526 at 5-6, 712 So.2d at 1022. Here, defendant was convicted of a violent offense and accordingly, his sentence does not shock one’s sense of justice.
In order to fully analyze defendant’s ineffective assistance of counsel claim, we must address the issue of consecutive sentences and whether or not the trial judge abused his discretion in sentencing. See, e.g., State v. Carto, 14-736 (La.App. 5 Cir. 1/14/15), 167 So.3d 836 (This Court had to address the trial judge’s decision to deny the defendant’s motion to suppress in order to fully determine if counsel was ineffective.)
La.C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or *1273 transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
Louisiana law favors concurrent sentences for crimes committed as part of a single transaction. La.C.Cr.P. art. 883; State v. Cornejo-Garcia, 11-619, p. 10 (La.App. 5 Cir. 1/24/12), 90 So.3d 458, 465. See also State v. Underwood, 353 So.2d 1013, 1019 (La.1977). However, a trial judge retains discretion to impose consecutive penalties on the basis of other factors, “including the offender’s past 1 ^criminality, violence in the charged crimes, or the risk he or she poses to the general safety of the community.” Cornejo-Garcia, 11-619 at 10, 90 So.3d at 465. See also State v. Thomas, 91-1144 (La.10/9/98), 719 So.2d 49 (per curiam).
If the trial court elects to impose consecutive sentences for crimes arising from a single course of conduct, the court must articulate the reasons that it feels such a sentence is essential. Cornejo-Garcia, 11-619 at 10, 90 So.3d at 465; State v. Blanchard, 03-0612 (La.App. 5 Cir. 11/12/03), 861 So.2d 657, 664, writ denied, 03-3389 (La.10/15/04), 883 So.2d 1045. Here, the trial court articulated his reasoning for defendant’s sentence. While the imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct, consecutive sentences are not necessarily excessive. State v. Petty, 12-278, p. 14 (La.App. 5 Cir. 10/30/12), 103 So.3d 616, 625; State v. Miller, 11-498 (La.App. 5 Cir. 12/13/11), 84 So.3d 611, 620-21, writ denied, 12-0176 (La.9/14/12), 97 So.3d 1012.
Furthermore, Louisiana jurisprudence supports the trial judge’s decision to impose consecutive sentences. See State v. Aleman, 01-743, p. 20 (La.App. 5 Cir. 1/15/02), 809 So.2d 1056, 1070-71, writ denied, 02-0481 (La.3/14/03), 839 So.2d 26 (Three counts of first degree robbery sentenced consecutively were not excessive, even though the acts at issue were “clearly part of the same course of conduct.”) Therefore, the instant case has an adequate factual basis for the imposition of consecutive sentences.
Further, defendant’s ineffective assistance of counsel claims fail to meet the prejudice prong of Strickland v. Washington. Defendant has not proved that it is likely his outcome would have been different if defense counsel had filed a motion to reconsider sentence. See Meaux, supra. See also State v. Webre, 09-351 (La.App. 3 Cir. 11/4/09), 21 So.3d 1154; State v. Mitchell, 37,916 (La.App. 2 Cir. 3/3/04), 869 So.2d 276, writ denied, 04-0797 (La.9/24/04), 882 So.2d 1168, cert. denied, 543 U.S. 1068, 125 S.Ct. 905, 160 L.Ed.2d 801 (2005) (Trial counsel’s decision not to object to the imposition of the consecutive sentences, even if error, was not so serious that he was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment; and, the defendant did not show that if trial counsel had objected to the imposition of consecutive sentences, there was a reasonable probability the outcome of the sentencing would have been different).

PRO SE ASSIGNMENT OF ERROR NUMBER THREE

The evidence was insufficient for a finding of guilt.

Defendant raises three pro se assignments of error. When the issues on *1274 appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Miller, 06-451, p. 6 (La.App. 5 Cir. 10/31/06), 945 So.2d 773, 778-79. If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id.
Defendant contends that there was no substantial evidence presented to support a finding of guilty of armed robbery. He argues that after the robbery occurred, one of the other perpetrators held a gun on him, forcing him to drive away.
The constitutional standard for testing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found -the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Smith, 12-247 (La.App. 5 Cir. 12/11/12), 106 So.3d 1048, writ denied, 13-0494 (La.7/31/13), 118 So.3d 1120.
Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Smith, 12-247 at 6, 106 So.3d at 1053; State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. In instances involving circuih-stantial evidence, La. R.S. 15:438 dictates that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Smith, 12-247 at 7, 106 So.3d at 1053.
When the trier of fact is faced with conflicting testimony, the weight of the testimony lays solely with the jury or judge, who may accept or reject, in whole or in part, the testimony of any witness. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833; State v. Bradley, 03-384 (La.App. 5 Cir. 9/16/03), 858 So.2d 80, 84, writ denied, 03-2745 (La.2/13/04), 867 So.2d 688. Therefore, it is' not the function of the appellate court to assess credibility or reweigh the evidence; rather, a reviewing court must consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. State v. Williams, 98-1146, p. 10 (La.App. 5 Cir. 6/1/99), 738 So.2d 640, 648, writ denied, 99-1984 (La.1/7/00), 752 So.2d 176; State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by a defendant offers an exculpatory explanation of events. State v. Mitchell, 09-996, p. 8 (La.App. 5 Cir. 5/25/10), 40 So.3d 1122, 1127, writ denied, 10-1557 (La.10/21/11), 73 So.3d 370. The reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt |19beyond a reasonable doubt. Id. See also State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83.
Here, defendant was convicted of armed robbery and aggravated flight from an officer. At the time of the offense, La. R.S. 14:64(A) defined armed robbery as “the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.” State ex rel. D.S., 11-416, pp. 8-9 (La.App. 5 Cir. 12/28/11), 83 So.3d 1131, 1136. En *1275 compassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. Id. Property that is taken is considered under the victim’s control when the victim could have prevented the taking had he not been subjected to the robber’s violence or intimidation. State v. Martin, 07-1035, p. 6 (La.App. 5 Cir. 10/28/08), 996 So.2d 1157, 1160. The State need not prove that the property taken was owned by the victim, but only that the accused was not the owner and the victim had a greater right to the item than the accused. Id. Furthermore, the act of pointing a gun at a victim is sufficient to prove the element of force or intimidation for purposes of armed robbery. Id.
In the present case, defendant does not challenge that an armed robbery occurred. Two other individuals involved pled guilty to the armed robbery. The State proved there was the taking of money, candy, and cigarettes from the store clerk at the Circle K and the robbers took the items by intimidation while armed with a gun. A high-speed chase ensued, where some items taken from the store were found in defendant’s vehicle. Defendant contends that as the driver, there was no evidence to suggest that he had any knowledge that the two perpetrators were going to commit an armed robbery or that they had committed an armed robbery.
 | 2qA person need not hold the weapon or perform the taking to be guilty of armed robbery under the law of principals. State v. Jackson, 99-1256, p. 6 (La.App. 5 Cir. 7/25/00), 767 So.2d 848, 851-52. A principal is any person concerned in the commission of a crime, whether present or absent, and whether he directly commits the offense, aids and abets in its commission, or directly or indirectly counsels or procures another to commit the crime. La. R.S. 14:24. A person who aids and abets another in a crime is liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending on the mental element proved at trial. State v. Watson, 397 So.2d 1337 (La.1981), cert. denied, 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981).
Only those persons who knowingly participate in the planning or execution of a crime are principals. State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427, 428. An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. Id. Though intent is a question of fact, it may be inferred from the circumstances. State v. Kahey, 436 So.2d 475, 488 (La.1983). Flight and attempt to avoid apprehension are circumstances from which the jury may infer guilty conscience. State v. Fuller, 418 So.2d 591, 593 (La.1982).
This Court has found that an individual who drives the getaway car is a principal. In State v. Falkins, 04-250, p. 13 (La.App. 5 Cir. 7/27/04), 880 So.2d 903, 912, the defendant driver argued there was no evidence to suggest that he knew the perpetrators were going to commit an armed robbery or that they had committed an armed robbery. Two other defendants had walked into a bank with guns, and robbed four tellers of approximately $20,000. Defendant driver waited in the car outside, ready to drive away, and drove off when the other defendants entered the car. Id. The record indicated that the vehicle was sitting at an angle “waiting and ready to go” with the back doors open, and was parked away from the bank, rather I,,,than in front. Id., 04-250 at 16-17, 880 So.2d at 914. Thus, this Court determined that the record demonstrated the factfinders could have reasonably believed that the defendant driver knew the other two perpetrators were going into the bank *1276 to rob it, and could have reasonably inferred that the defendant had the requisite intent to commit the crime because he aided its commission by acting as the driver of the getaway car. Id., 04-250 at 16-17, 880 So.2d at 914.
In State v. Jackson, 99-1256, p. 6 (La.App. 5 Cir. 7/25/00), 767 So.2d 848, 852, this Court found that although the defendant driver of the getaway car did not actually participate in the armed robbery, he was a principal to the action. There, the defendant’s two co-defendants entered an apartment, pointed handguns at a group of women, and demanded money. Id., 00-1256 at 3, 767 So.2d at 850. A witness observed the other two defendants jump into a car driven by the defendant driver and a high-speed car chase with police ensued soon after. Id. The two codefendants provided recorded statements to the police that the defendant was not only involved in the robbery, but had planned it and gave them weapons. Id. This Court found that, viewed in the light most favorable to the prosecution, the combination of direct and circumstantial evidence, including the co-defendants testimony of defendant’s involvement in the crime, was sufficient to convict defendant of armed robbery. Id., 00-1256 at 6, 767 So.2d at 852.
Here, defendant’s vehicle had not been parked visibly in the front of the Circle K, but rather had been parked around the side of the store. Following the robbery, a marked police car, with sirens, attempted to stop defendant’s vehicle. When defendant’s vehicle failed to stop, a high-speed chase ensued, where defendant went through at least one red light and drove at approximately one hundred and ten miles per hour. As defendant’s car rolled to a stop, defendant bailed out of the vehicle and the police officer shot him in the leg. Defendant, with a gunshot wound, continued [ ??to flee the scene, and the K-9 unit was deployed and successfully apprehended him. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that defendant was guilty as a principal to armed robbery.
Similarly, the evidence was sufficient to convict defendant of aggravated flight from an officer. At the time of the offense, La. R.S. 14:108.1(C) defined aggravated flight from an officer as:
Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop or of an operator to bring a watercraft to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer When the officer has reasonable grounds to believe that the driver or operator has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft.
The jury could have easily found defendant was directly involved in the commission of the crime of aggravated flight from an officer. Immediately after the armed robbery occurred, police tried to get defendant to stop his car by means of sirens and flashing lights. Rather than pulling over, defendant led the officer on a high-speed chase, disregarding traffic signals and speeding in excess of one hundred miles per hour. He continued to flee until his vehicle got a flat tire and rolled to a stop. Defendant was shot in the leg by an officer, and continued to. flee the scene. He fled until cornered and caught by the K-9 unit.
Evidence of flight, concealment and attempt to avoid apprehension is relevant in the charge of aggravated flight *1277 from an officer. State v. Ashley, 33,880 (La.App. 2 Cir. 10/4/00), 768 So.2d 817, writ denied, 00-3122 (La.12/8/00), 776 So.2d 466. Flight indicates consciousness of guilt and is a circumstance from which a jury may infer guilt. State v. Ashley, supra; State v. Brown, 618 So.2d 629 (La.App. 2 Cir.1993), writ denied, 624 So.2d 1222 (1993). Thus, this error asserted by defendant in his pro se brief is without merit.

jmpro se assignment of error NUMBER ONE

Defendant, Dale Brown was denied his right to a fair trial under both United States and Louisiana Constitutions by the prosecutor’s impermissible closing argument.

Defendant argues that in closing argument, the prosecutor explicitly “vouched” for the pre-trial hearing testimony by the two other perpetrators who pled guilty to the armed robbery. Defendant argues that the prosecutor emphasized defendant’s absence at the pre-trial hearing, which enabled the two witnesses to testify truthfully because they were intimated by defendant. Defendant also contends the State erroneously and improperly referred to him as a “ten-time burglar.”
The record reveals that defendant did not object to any portion of the State’s closing argument; and thus, did not preserve the issue of any improper argument for appellate review. La.C.Cr.P. art. 841. See also State v. Benoit, 04-436, pp. 16-17 (La.App. 5 Cir. 9/28/04), 885 So.2d 625, 635. Nevertheless, even if the State made improper comments during closing argument, the Court finds the error was harmless. The trial judge instructed the jury that statements and arguments made by the attorneys were not evidence. Accordingly, we find that this error asserted by defendant' in his pro se brief is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO

Dale Brown’s constitutional rights were violated by permitting prosecutor to impeach (State) witnesses and offer evidence of prior convictions without also requiring limiting jury instructions.

Defendant argues that it was an error to not require limiting jury instructions, informing the jury that witnesses’ prior inconsistent statements could not be used as substantive evidence of the truth of its contents. Defendant further contends that it | pjwas an error to not require jury instructions informing the jury that prior crimes could not be used as evidence in the current offense.
Here, at the pre-trial hearing, two other perpetrators of the armed robbery testified that defendant had knowledge of the robbery. At trial, the two other perpetrators invoked their right to remain silent on the questions concerning defendant and his involvement in the armed robbery. Thus, defendant complains that the two other perpetrators’ statements were improperly used to prove a substantive element of the crime. It is noted that defendant failed to request any type of limiting instruction regarding the use of the prior inconsistent statement. See State v. Hensley, 00-1448, p. 8 (La.App. 5 Cir. 2/28/01), 781 So.2d 834, 841-42. La.C.Cr.P. art. 807 states that a defendant has a right, before argument, to submit to the court special written charges for the jury. The record reflects that defense counsel did not submit any special charges either orally, or in writing, as required by La.C.Cr.P. art. 807. In addition, the two other perpetrators’ statements were not inconsistent with the statements made at the pre-trial hearing. At trial, the two other perpetrators re *1278 fused to answer questions related to defendant’s involvement in the robbery. Therefore, we do not find that the trial court erred in not giving a limiting instruction.
Lastly, defendant argues that his constitutional rights were violated when the State offered evidence of his prior convictions without requiring a limiting instruction. Defendant did not object to the admission of his prior convictions as evidence at trial. Rather, he argues on appeal that the jury should have been given a limiting instruction that his prior crimes could not be used as substantive evidence. Again, defendant failed to submit any special charges as required by La.C.Cr.P. art. 807. Considering the facts and circumstances, we do not find that the trial court erred in not giving a limiting instruction.
^Accordingly, this pro se assignment of error is without merit.

ERROR PATENT DISCUSSION

The record was reviewed for errors patent according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors patent in this case.

DECREE

Defendant’s convictions and sentences for armed robbery and aggravated flight from an officer are hereby affirmed.
AFFIRMED

. Sergeant Heintz is with the Gretna Police Department.